# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

|  |  |
|---|---|
| ARIE PABLO DOSORETZ, AMY FOX, JAMES RUBENSTEIN, AND MICHAEL J. KATIN, | Case No. 2:19-cv-00162 |
| Plaintiffs, |  |
| v. | ORAL ARGUMENT REQUESTED PURSUANT TO LOCAL RULE 3.01(J) |
| 21ST CENTURY ONCOLOGY HOLDINGS, INC., 21ST CENTURY ONCOLOGY, LLC, AND 21ST CENTURY ONCOLOGY, INC., |  |
| Defendants. |  |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), 21st Century Oncology

Holdings, Inc., 21st Century Oncology, LLC, and 21st Century Oncology, Inc. (collectively,

"21C" or "Defendants"), by and through their undersigned counsel, hereby move to dismiss

the complaint (the "Complaint") filed by Dr. Arie Pablo Dosoretz, Dr. Amy Fox, Dr. James

H. Rubenstein, and Dr. Michael J. Katin (collectively, "Plaintiffs").[1]

---

[1]     Pursuant to Middle District of Florida Local Rule 3.01(j), 21C requests one hour of oral argument for its motion to dismiss.

## PRELIMINARY STATEMENT

Plaintiffs contort an unexceptional employment dispute into a federal antitrust lawsuit alleging an unlawful monopoly.  The flawed Complaint lays bare that this effort strains law and fact.

The factual allegations here are simple.  Plaintiffs are radiation oncologists, who years ago each signed employment agreements with 21C.  Each contract included bargained-for restrictive covenants (the "non-compete provisions") that were narrowly tailored in length, geographic scope, and (in some cases) business size to protect the legitimate business interests of 21C.  In exchange, Plaintiffs received significant consideration and profited handsomely from their employment and other business dealings with 21C.  Plaintiffs now want out of their contracts but do not want to abide by the reasonable, legitimate, and justified non-compete provisions that are consistent with Florida law.  No doubt recognizing the difficulty in challenging the non-compete provisions on the law and the facts, Plaintiffs attempt to dress up their employment law claims as a federal antitrust case.  This attempt is as transparent as it is fatally flawed.

First, in two different ways, time is up on Plaintiffs' claims for a "declaratory judgment" on the non-competes that were negotiated and agreed to more than four years ago.  Both the Plan of Reorganization and Confirmation Order (which benefited Plaintiffs and for which they voted) entered last year as a result of 21C's bankruptcy proceedings extinguished any claims that the non-compete provisions were invalid.  Plaintiffs' antitrust claims are also time barred by the four-year statute of limitations applicable to those claims.

2

Second, the provisions Plaintiffs seek to invalidate—certain restrictive covenants prohibiting Plaintiffs from working at certain competing enterprises—were and are valid and enforceable under federal and state law as reasonable, legitimate, and justified.  Florida Statutes Section 542.335 ("Valid restraints of trade or commerce") expressly authorizes reasonable non-competition covenants just like these, and Plaintiffs fail to allege any facts suggesting the non-compete provisions are anything other than enforceable.

Third, Plaintiffs do not have standing to bring their alleged antitrust claims, because they have not suffered an antitrust injury.  Plaintiffs have not alleged antitrust injury, because they have not alleged the type of harm that the antitrust laws were intended to prevent.  The non-compete provisions are reasonable and justified, and therefore, they are not restrictive and are not anticompetitive.  Accordingly, any harm Plaintiffs may have allegedly suffered because of those provisions does not constitute an antitrust injury.

Fourth, Plaintiffs' federal antitrust claims fail because they have not alleged facts sufficient to state a claim under Section 2 of the Sherman Act.  Plaintiffs fail to plead that Defendants did anything exclusionary:  Courts consistently recognize that restrictive covenants like the non-compete provisions at issue here do not, in fact, restrict competition and are therefore not exclusionary.  Plaintiffs also fail to properly plead a relevant market or facts evidencing that 21C possesses or may possess monopoly power in any such market.  For example, in one breath Plaintiffs offer conclusory assertions of high barriers to entry as a basis to show monopoly power, yet in the next they concede that in the absence of the non-compete provisions they would enter the market and compete against 21C.

Finally, the Complaint conveniently glosses over that (i) Plaintiffs are either co-founders of 21C or children of 21C's former founder and Chief Executive Officer and (ii) most Plaintiffs served in leadership roles.  Under law and equity, Plaintiffs cannot now claim that their own conduct somehow justifies ripping up their bargained-for employment agreements.

For these reasons, Plaintiffs' employment dispute should be treated as such, the restrictive covenants should be enforced, and Plaintiffs' claims should be dismissed.

## BACKGROUND[2]

### I.      The Parties

Defendants 21st Century Oncology Holdings, Inc., 21st Century Oncology, LLC, and 21st Century Oncology, Inc. operate as an integrated cancer care company, which includes providing radiation oncology services.  Compl. ¶¶ 5-7.  Radiation oncology is a medical specialty that involves the controlled use of radiation to treat cancer.

Radiation oncologists typically see patients following a referral from a physician in another medical specialty, such as medical oncology, gynecology, urology, or surgery.  *Id.* ¶ 74.  21C has invested significant time, effort, and money into (i) developing the capital equipment, unique and proprietary software, and expertise required for the technical side of radiation therapy and (ii) its confidential business information, substantial relationships, and patient goodwill.  *Id.* ¶¶ 70-73, 81-86.

---

[2]      As they must on a motion to dismiss, Defendants take Plaintiffs' factual allegations as true, although Defendants contest such allegations.  Defendants also vehemently deny that Defendants are monopolists or are in any way violating any antitrust or other applicable law.

Plaintiff Dr. Michael Katin ("Katin") is a radiation oncologist formerly employed by 21st Century Oncology, LLC.  *Id.* ¶ 4.  Katin executed an employment agreement with 21C on or about February 21, 2008, which contains the non-compete provision at issue in this case.  *Id.* ¶ 94.  He was a member of the 21C Board of Directors.  Ex. 5 (2014 Annual Report on Form 10-K) at 121.[3]

Plaintiff Dr. James Rubenstein ("Rubenstein") is a radiation oncologist currently employed by 21st Century Oncology, LLC.  Compl. ¶ 3.  He was also a member of the 21C Board of Directors.  Ex. 5 (2014 Annual Report on Form 10-K) at 121.  Rubenstein executed an employment agreement with 21C on or about February 21, 2008, which contains the non-compete provision at issue in this case.  Compl. ¶ 93.

Plaintiff Dr. Arie Pablo Dosoretz ("Dosoretz") is a radiation oncologist currently employed by 21st Century Oncology, LLC.  *Id.* ¶ 1.  Dosoretz executed an employment agreement on or about February 3, 2015, which incorporated by reference a Non-Competition and Confidentiality Agreement executed on the same day.  *Id.* ¶ 90.  Dosoretz also served as the Chief Clinical Administrative Officer for 21C-affiliated entities.  Ex. 3 (Dosoretz Employment Agreement) at 42-43.

---

[3]    References to "Ex." are references to the Exhibits to the Declaration of John Terzaken submitted in connection with this motion.  Defendants include as Exhibits and/or request judicial notice of only those materials properly before the Court on a motion to dismiss, which includes materials that are "central to the plaintiff's claim," whose "authenticity is not challenged," and included by reference in the complaint.  *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (finding that defendant's attachment of documents referenced in a complaint and central to the plaintiff's claim may be considered by the Court and do not convert a motion to dismiss into a motion for summary judgment.).

Plaintiff Dr. Amy Dosoretz Fox ("Fox") is a radiation oncologist currently employed by 21st Century Oncology, LLC.  Compl. ¶ 2.  On or about May 1, 2009, Fox executed a Non-Competition and Confidentiality Agreement in conjunction with and in consideration of her employment agreement.  *Id.* ¶ 92.

## II.    The Employment Agreements

Each Plaintiff's employment agreement contains bargained-for restrictive covenants that (i) are uniquely tailored to each Plaintiff and (ii) were agreed-to in consideration for generous compensation and for use of 21C's confidential business information, sophisticated radiation oncology equipment and technology, and specialized training.

The restrictive covenant in Rubenstein's employment agreement bars him from competing against 21C at any hospital where the Company regularly treats patients, in any county where 21C or an affiliate operates, or within a 25-mile radius of a 21C facility; the restriction, effective upon execution, extends for three years beyond his employment with 21C.  However, Rubenstein's agreement ***has a carve out that permits him to compete*** against 21C immediately upon leaving 21C in a group of up to five other radiation oncologists, so long as the group is not affiliated with another practice and does not have more than one geographic location.  Ex. 2 (Rubenstein Employment Agreement) at 5-6.

As another long-tenured former employee, Board member, and owner, Katin has an employment agreement that contains a restrictive covenant that bars him from competing against 21C at any hospital where the Company regularly treats patients, in any county where 21C or an affiliate operates, or within a 25-mile radius of a 21C facility.  The restrictive covenant also prohibits Katin from engaging in any business that competes with 21C in the

radiation therapy business in any state where 21C operates or plans to operate as of the date of termination of the employment agreement.  The restriction, effective upon execution, extends for three years beyond his employment with 21C.  Ex. 1 (Katin Employment Agreement) at 5-7.

The restrictive covenant in Dosoretz's employment agreement bars him from competing against 21C by providing professional or administrative radiation oncology services in Lee, Collier, and Charlotte Counties, at any facility within a 20-mile radius of a 21C facility, or any other location where Dosoretz provided services on behalf of 21C.  The restriction, effective upon execution, extends for two years beyond his employment with 21C.  Ex. 3 (Dosoretz Employment Agreements) at 23-25.

Amy Dosoretz Fox's employment agreement contains restrictive covenants that bar her from competing within a 20-mile radius of four enumerated 21C facilities or any other office where she provided services on behalf of 21C.  The restriction, which does ***not*** cover the entirety of Lee, Collier, and Charlotte Counties, was effective upon execution and extends for one year beyond her employment with 21C.  Ex. 4 (Fox Employment Agreements) at 24-25.

### III.    The Bankruptcy Proceedings[4]

On May 25, 2017, 21st Century Oncology Holdings, Inc. and its debtor affiliates filed a voluntary petition for relief under the Bankruptcy Code.  As part of the bankruptcy

---

[4]    Defendants respectfully request that this Court take judicial notice of the bankruptcy proceedings, *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y.) (Dkt. # 1312), and the filings therein, pursuant to Federal Rule of Evidence 201.

proceedings, the debtors filed a plan supplement that identified the executory contracts that would be assumed by the Plan of Reorganization.  Each of the Plaintiffs received a notice of assumption with respect to his or her employment agreement.  The notice clearly stated the deadline (November 27, 2017 at 4:00 PM ET) by which Plaintiffs had to file an objection to the assumption of their agreements and confirmation of Defendants' Plan of Reorganization. The notice also explicitly stated that the assumption of the employment agreements would "result in the full release and satisfaction of any claims or defaults, whether monetary or non-monetary," including claims related to the employment agreements.

None of the Plaintiffs raised any claim or objection, and none of the Plaintiffs objected to confirmation of the Plan of Reorganization.  Two of the Plaintiffs (owners Rubenstein and Katin) affirmatively voted to accept the Plan of Reorganization; and each demanded and received significant benefits from the debtors in connection with the confirmation of the Plan of Reorganization.  Dkt. # 13-1 (Defs.' Mot. to Reopen) ¶ 28.  On January 11, 2018, the bankruptcy court entered an order confirming the Plan of Reorganization, which became effective on January 16, 2018 and provides for the "full release and satisfaction" of any claims or defaults arising under any assumed Executory Contracts.  *See In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (Bankr. S.D.N.Y. Jan. 11, 2018) (Dkt. # 915) ("Confirmation Order") at ¶ 72.  Section 8.3 of the Plan of Reorganization, which was approved by the Confirmation Order, also contains a broad release of "any and all claims, . . . rights, suits, damages, causes of action, remedies and liabilities whatsoever" against the Reorganized Debtors.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations contained in the complaint as true and must view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Unlike factual allegations, conclusions "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1185 (11th Cir. 2003).

## ARGUMENT

### I.   The Bankruptcy Discharge Bars This Case[5]

Plaintiffs' claims arise from employment agreements executed as early as February 2008 and as late as February 2015.  Compl. ¶¶ 89-94.  Each non-compete provision in the employment agreements became effective upon execution of the agreement.  Accordingly, the restrictive covenants Plaintiffs complain about today were equally in force upon execution.  Plaintiffs abided by these terms during their employment and take issue with them only now.  Their allegations in this case are the same today as they would have been on November 27, 2017:  This is in part evidenced by the fact that Plaintiffs are seeking only

---

[5]   Defendants have filed a motion to stay this proceeding pending confirmation from the Bankruptcy Court that these claims have been discharged.  *See* Dkt. # 13.

declaratory relief.  Accordingly, Plaintiffs' claims pre-date 21C's January 2018 Confirmation Order, which effected the release and/or discharge *of these exact claims*.  "A final order confirming a chapter 11 plan bars litigation of all issues that could have been raised in connection with confirmation....  Numerous courts ... on numerous occasions [have held] that a bankruptcy court order approving the assumption of an executory contract, is necessarily a finding that no uncured defaults exist."  *In re Arriva Pharm., Inc.*, 456 B.R. 419, 424 (Bankr. N.D. Cal. 2011) (internal citations omitted); *see also Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02-cv-9629, 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003) ("As a general matter, a debtor's plan of reorganization, once confirmed, binds the debtor and all creditors, whether or not a creditor has accepted the plan.").

Here, Plaintiffs were on notice of their claims prior to entry of the Confirmation Order and approval of the Plan of Reorganization, and they received actual notice that failure to object to the assumption of their employment agreements would result in the "full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary," with respect to the employment agreements.  Because Plaintiffs failed to object to the assumption of the employment agreements under the Plan of Reorganization or to entry of the Confirmation Order (two of the Plaintiffs even voted for it), Plaintiffs' claims related to the employment agreements are fully released and/or discharged under the Plan of Reorganization and the Confirmation Order.  Confirmation Order ¶ 72.

The conclusion does not change now that Plaintiffs choose to challenge the non-compete provisions more than a year after entry of the Confirmation Order.  Indeed, the Sixth Circuit squarely addressed this issue in *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d

10

896, 902 (6th Cir. 2009) ("*Tam*").  In *Tam*, a group of travel agencies brought a Sherman Act

claim against a group of airlines for an alleged conspiracy to reduce, cap, and ultimately

eliminate the payment of commissions to the agents in a purported effort to drive them out of

business.  *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03-cv-30000, 2007 WL

3171675, at *4 (N.D. Ohio Oct. 29, 2007).  Three of the defendant airlines moved to dismiss

the claims against them because the alleged conduct, which took place between 1995 and

2002, pre-dated their 2005, 2006, and 2007 bankruptcy discharges.  *Id*. at *4.  The district

court held that the bankruptcy discharge barred the claims.  *Id.*  On appeal, the plaintiffs

argued that United's decision to continue using the "conspiracy commission rate" post-

bankruptcy was an overt act that created a new antitrust claim.  *Tam*, 583 F.3d at 901-902.

The Sixth Circuit rejected this argument and affirmed dismissal, holding that United's

decision to maintain the pricing policy was not an overt act.  *Id.* at 902.  The Court explained

that although antitrust injuries may create a "rippling effect," these effects do not give rise to

a new claim, because to hold otherwise would allow a plaintiff to "routinely salvage an

otherwise untimely claim by asserting that it continues to lose revenue because of past

anticompetitive conduct."  *Id*.

    The facts of the present case compel the same conclusion here.[6]  Plaintiffs' alleged

injury would have arisen upon supposed exercise of "monopoly power" coincident with the

execution of the employment agreements containing the non-compete provisions, each of

---

[6]      Although the analysis may vary, courts have applied the continuing violation theory in cases involving both Section 1 and Section 2.  *See, e.g.*, *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1056 (5th Cir. 1982) (finding no new act during the limitations period to support revival of Section 1 or Section 2 claims).

which pre-dates and was assumed as part of approval of the Plan of Reorganization. *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979) (holding that for competitor-plaintiffs a monopolization claim accrues at the time of the defendant's anticompetitive conduct). Although each employment agreement has been subject to subsequent amendments, Plaintiffs do not allege (because they cannot) that any of these amendments impacted the non-compete provisions. Plaintiffs' only "new" allegation is their aspiration to affirmatively negate the non-compete provisions in their employment agreements. Compl. ¶¶ 100-01. But, as in *Tam*, this event is only an inevitable result of Plaintiffs' agreement to the non-compete provisions years ago, and Plaintiffs allege no post-bankruptcy conduct. *See Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74, 81 (6th Cir. 1981) (noting that accrual of an antitrust claim is based on an "injurious act" rather than "the abatable but unabated inertial consequences" of that act (quoting *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975))). Plaintiffs do not (and cannot) claim that any of the other allegedly anti-competitive conduct, such as their undated allegations regarding the use of bonus pools, and exclusive contracts with local hospitals, arose post-bankruptcy. *See* Dkt. # 18 (Opp'n to Defs.' Mot. to Stay). Accordingly, Plaintiffs' claims should be dismissed with prejudice as they were released and/or discharged under the Plan of Reorganization and Confirmation Order.

## II.   The Statute of Limitations Bars This Case

Plaintiffs' Sherman Act claims are time barred for similar reasons. A claim under Section 2 must be brought within four years of when the cause of action accrued. 15 U.S.C. § 15b. Courts have long held that an antitrust cause of action accrues when a defendant

commits an act that injures a plaintiff's business.  When the rights and liabilities of parties are contained in a contract and when the potential harm from that contract is not speculative, the statute of limitations begins to run at the time the contract is executed.  *See City of El Paso v. Darbyshire Steel Co.*, 575 F.2d 521, 523 (5th Cir. 1978)[7] (finding an antitrust claim accrued upon execution of allegedly affected contract).  Here, Plaintiffs negotiated and executed the employment contracts at issue more than four years ago, have been subject to the non-compete restrictions since that time, and can point to no new acts causing harm to them since then that would justify extending the statute of limitations.  Plaintiffs' antitrust claims are, therefore, time barred.  *See N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322, 331 (M.D.N.C. 1991) (barring a claim as outside the statute of limitations when plaintiffs knew for decades that a contract term prevented them from competing in the market yet they waited, reaping the benefits of the contract).

## III.    Plaintiffs Fail To State A Claim Under Florida Statute Section 542.335[8]

Florida law authorizes the enforcement of written restrictive covenants notwithstanding the general prohibition on restraints of trade under state and federal law.

---

[7]      *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[8]      If the Court dismisses Plaintiffs' federal law claims, the Court need not accept jurisdiction over Plaintiffs' state law claims.  *Brewer v. Bank of Am., N.A.*, No. 6:12-cv-1633, 2013 WL 980281, at *3 (M.D. Fla. Mar. 13, 2013) (declining supplemental jurisdiction over claim seeking declaratory judgment under 28 U.S.C. § 2201 regarding state law issues after dismissing plaintiff's federal claims).

Fla. Stat. § 542.335.  Nothing in the Complaint suggests the employment agreements fall outside the scope of the statute.

First, the Complaint acknowledges that the employment agreements are in writing and that 21C invests in its employees, patients, facilities, referral relationships, patient care, and goodwill.  Compl. ¶¶ 64, 70-74, 90-94 (explaining that radiation oncologists require extensive training, that opening a radiation oncology center requires millions of dollars of investment in facilities and equipment, and that referral relationships are the "lifeblood" of radiation oncology).  This type of information, particularly knowledge of existing patient relationships, qualifies as a legitimate business interest under Florida law.  *See* Fla. Stat. §542.335(1)(b); *White v. Mederi Cartenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 784-85 (Fla. 2017) (A "legitimate business interest" can also be any "business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner.").[9]

The gravamen of the Complaint is that, notwithstanding the multiple and obvious legitimate business interests served by the non-compete provisions, such restrictions cannot serve any legitimate business interest if they "perpetuate a monopoly."  Compl. ¶ 124. However, this is *precisely* the exception to what otherwise may be invalid restraints on competition.  Fla. Stat. § 542.355(1) ("Notwithstanding [Florida and federal antitrust laws], enforcement of contracts that restrict or prohibit competition during or after the term of

---

[9]      *See also Ansaarie v. First Coast Cardiovascular Institute, P.A.*, 252 So. 3d 287, 290-91 (Fla. 1st DCA 2018) (recognizing hospital's relationship with existing patients and its substantial investment in developing such relationships as protected legitimate business interests).

restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited."). Having conceded, as Plaintiffs must, that the non-compete provisions serve various legitimate protectable interests, the fact that such provisions may restrict competition does not diminish these interests or preclude enforcement of the agreements.[10]  *See White*, 226 So. 3d at 785 ("Section 542.355 is a carve out of the general prohibition, striking a delicate balance between legitimate business interests and a person's inalienable right to work.").

Second, Plaintiffs have offered only conclusory statements that the non-compete provisions are overbroad.  Compl. ¶¶ 89-94.  This is insufficient to carry their burden under Section 542.335(1)(c).  Courts consistently conclude that non-competes are reasonable when limited geographically to areas where the employer has offices or where the employee provided services, which is precisely the case here.  *See Akey v. Murphy*, 238 So. 2d 94, 97 (Fla. 1970) (restriction on physician practicing within thirty miles of clinic upheld); *Capelouto v. Orkin Exterminating Co.*, 183 So. 2d 532, 534 (Fla. 1966) (validating a non-compete covering a 15- or 16-county area).[11]  Courts have also consistently found that non-compete covenants are reasonable when they are of limited duration, which is also the case here.  *See Ansaarie v. First Coast Cardiovascular Inst., P.A.*, 252 So. 3d 291-92 (Fla. 1st

---

[10]     As discussed *infra*, Defendants firmly reject any suggestion that the non-compete provisions actually restrict competition.

[11]     *See also Carnahan v. Alexander Proudfoot Co. World Headquarters*, 581 So. 2d 184, 186 (Fla. 4th DCA 1991) (approving geographic restriction covering the United States and Australia); *Capraro v. Lanier Bus. Prods., Inc.*, 445 So. 2d 719, 721 (Fla. 4th DCA 1984) (finding non-compete agreement covering five counties reasonable, even though employee worked in only one of the counties), *aff'd*, 466 So. 2d 212 (Fla. 1985).

DCA 2018) (enforcing covenant not to compete that had a two-year term).  Dosoretz's and Fox's restrictive covenants contain two- and one-year terms, respectively, which are presumptively reasonable for employees under Section 542.335.   Compl. ¶¶ 90, 92.  And Rubenstein's and Katin's restrictive covenants each contain three-year terms, *id.* ¶¶ 93-94, which are presumptively reasonable as sellers of 21C business assets.[12]  Fla. Stat. § 542.335(3); *see Avalon Legal Info. Servs., Inc. v. Keating*, 110 So. 3d 75, 82 (Fla. 5th DCA 2013) (finding reasonable seller's three-year prohibition on engaging in competitive business).  Simply put, Plaintiffs have not alleged any facts to overcome the presumption that the non-compete provisions are reasonable under Florida law.

Finally, Plaintiffs fail to make any factual allegations in support of their claim that the non-compete provisions violate public policy.  Notably, Plaintiffs do not allege facts showing that there would be a "critical shortage of radiation oncologists" upon enforcement of the non-compete provisions that would actually result in any quantifiable harm to the public, or that demand for radiation oncologists in Collier, Lee, and Charlotte Counties could not be met by current physicians.  Compl. ¶¶ 127-28.  Plaintiffs' vague and tenuous assertion provides this Court with no basis for identifying and articulating the public policy implicated, and thus, no basis for finding that the "specified public policy requirements substantially outweigh the need to protect the legitimate business interest."  Fla. Stat. § 542.335(i); *see also MDS (Canada) v. Rad Source Tech., Inc.*, No. 09-cv-61652, 2009 WL 10668765, at *9

---

[12]     Both Rubenstein and Katin were not only employees of 21C, but also (i) were owners of professional corporations with which 21C had stock transfer agreements that, as a result, paid them for their interests, and (ii) were owners 21C equity units.  Ex. 5 (2014 Annual Report on Form 10-K) at 121-122, 124-125.

(S.D. Fla. Oct. 27, 2009) (holding that "tenuous public policy considerations" regarding cost and availability of healthcare failed to outweigh need to protect legitimate business interests as required under Section 542.335(i)).

### IV. Plaintiffs Lack Standing To Bring Antitrust Claims

Plaintiffs' antitrust claims should be dismissed because Plaintiffs fail to demonstrate that they suffered an antitrust injury, an essential element of antitrust standing.[13]  *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir. 1991).[14]  To establish antitrust injury, a plaintiff must allege that it suffered an injury of the type that "the antitrust laws were intended to prevent."  *Id.* at 1449.  Thus, to plead antitrust injury, a plaintiff must plead that it has suffered an injury that "derives from some anticompetitive conduct." *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1571 (11th Cir. 1991).

The only injury Plaintiffs complain of is derived from the reasonable, legitimate, and justified non-compete provisions.  First, these were part of the bargain in agreeing to employment by 21C.  Plaintiffs may not claim that their own choices constitute antitrust injuries.  On this basis alone courts have dismissed antitrust claims seeking to invalidate non-compete clauses.  *See, e.g.*, *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1378 (8th Cir. 1983) (dismissing antitrust claims because any limitation on competition by reason of "the agreements not to compete was only brought about by plaintiffs' voluntary and negotiated

---

[13]     Plaintiffs must demonstrate antitrust standing in addition to Article III standing.

[14]     *See Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1301 (M.D. Fla. 2002) (granting motion to dismiss antitrust claims where plaintiff lacked antitrust standing); *Sheet Metal Workers Nat. Health Fund v. Amgen Inc.*, No. 07-cv-5295, 2008 WL 3833577, at *7 (D.N.J. Aug. 13, 2008) (applying antitrust standing to claim for declaratory judgment).

contractual choice" and Plaintiffs failed to demonstrate they signed the agreements due to threats, predatory conduct, or inferior bargaining position).[15]  Here, too, Plaintiffs fail to allege that they signed their agreements for any reason other than their own self-interest.

Second, any injury potentially sustained by Plaintiffs would arise from a standard contractual provision, not a lack of competition.  Plaintiffs must demonstrate that their agreements are not reasonable and that Defendants executed these agreements not as ancillary aspects of legitimate contracts, but specifically to exclude Plaintiffs from the market.  *Alders v. AFA Corp. of Fla.*, 353 F. Supp. 654, 658 (S.D. Fla. 1973) (holding that a reasonable non-compete covenant like the one here is not anti-competitive and citing case-law for the same proposition)[16]; *Lektro-Vend Corp. v. Vendo Corp.*, 500 F. Supp. 332, 352 (N.D. Ill. 1980) (observing that legitimate, necessary non-competes ancillary to lawful contracts, not solely intended to exclude competitors from the market, satisfy federal law).  Plaintiffs make neither showing:  Plaintiffs base their claims almost entirely on their non-compete provisions executed in connection with their legitimate employment agreements,

---

[15]     *See Snyco, Inc. v. Penn Cent. Corp.*, 551 F. Supp. 949, 952 (E.D. Pa. 1982) ("[T]he diminished number of competitors results from plaintiff's voluntary, contractual withdrawal from the market . . . ."); *cf. Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (finding no constitutional standing where plaintiff's "dilemma is particularly chimerical . . . because the [plaintiff's] asserted injury appears to be largely of its own making").

[16]     *Tri-Cont'l Fin. Corp. v. Tropical Marine Enter., Inc.*, 265 F.2d 619 (5th Cir. 1959) (upholding against antitrust challenge a covenant prohibiting the buyer of a vessel from operating the boat for ten years as a ferry between ports in specified Southern states and Cuba); *Cincinnati, Portsmouth, Big Sandy and Pomeroy Packet Co. v. Bay*, 200 U.S. 179 (1906) (upholding five-year covenant ancillary to the sale of certain vessels); *Day Co., Inc. v. Patat*, 403 F.2d 792 (5th Cir. 1968) (upholding a five-year covenant not to compete); *Rinker Materials Corp. v. Holloway Material Corp.*, 167 So. 2d 875 (Fla. 2d DCA 1964) (enforcing a ten-year restraint on the principal of an acquired competitor was approved and enforced).

and as reflected *supra*, the non-compete provisions here, based on the pleadings in the Complaint, are appropriately and legitimately limited in scope, duration and application.

Further, Plaintiffs' misplaced allegation that these agreements limit consumer choice does not create antitrust injury for Plaintiffs. *Caudill v. Lancaster Bingo Co.*, No. 2:04-cv-695, 2005 WL 2738930, at *6 (S.D. Ohio Oct. 24, 2005) (observing "there is nothing inherently anticompetitive about a non-competition agreement between an employer and an employee who is primarily responsible for client contact and services," and plaintiffs otherwise failed to allege the agreements excluded a superior product or a lower cost alternative or harmed competition); *Stuebing Automatic Mach. Co. v. Gavronsky*, No. 1:16-cv-576, 2016 WL 7365093, at *2 (S.D. Ohio Dec. 19, 2016) ("defendant Gavronsky's bare allegation that the [10-year] non-compete clause [covering North America] he signed with plaintiff restrained trade and violated federal antitrust law fails to set forth sufficient factual allegations of an antitrust injury"). Thus, Plaintiffs have not—and cannot—allege any antitrust injury. Accordingly, their antitrust claims fail and should be dismissed.

## V.     Plaintiffs Fail to State An Antitrust Claim Against 21C

### A.     Plaintiffs Fail To Establish A Claim For Monopolization

Plaintiffs must demonstrate monopoly power in a relevant market and the willful acquisition or maintenance of that power as distinguished from growth or development as a result of a superior product, business acumen, or historic accident. *Morris Commc'ns Corp. v. PGA Tour, Inc.,* 364 F.3d 1288, 1293-94 (11th Cir. 2004). They fail to do so here.

First, Plaintiffs fail to adequately allege a relevant market. To define the market Plaintiffs must adequately describe the market's product and the geography. The relevant

product market must include "those products or services that are either (1) identical to or (2) available substitutes for the defendants' product or service." *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 971 F. Supp. 1419, 1426 (M.D. Fla. 1997). The relevant geographic market is "the area of effective competition in which a product or its reasonably interchangeable substitutes are traded." *L.A. Draper & Son v. Wheelabrator–Frye, Inc*., 735 F.2d 414, 423 (11th Cir. 1984). Plaintiffs allege the relevant market is radiation oncology services provided to Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, and private insurance companies in "the Southwest Coast of Florida," which Plaintiffs allege is "no larger than Collier, Lee, and Charlotte Counties." Compl. ¶ 58.[17]

Plaintiffs' market definition suffers multiple fatal defects. Plaintiffs allege that, in addition to the market segments in their definition, the local market includes sizable numbers of self-insured individuals and "others." *Id.* ¶ 51 (indicating self-pay and "other" hospital discharges in Charlotte, Collier, and Lee counties account for 18% of hospital inflow). Yet with no explanation, Plaintiffs leave those substantial cohorts out of their market definition. Similarly, Plaintiffs define the relevant market as the "Southwest Coast of Florida." *Id.* ¶ 58. They offer no reason for that choice and fail to explain why the market does not extend to other parts of Florida or even nationally. Then Plaintiffs define that region as "no larger than" Collier, Lee, and Charlotte Counties. *Id.* This ignores at the very least Sarasota County and Manatee County. Particularly in light of the highly specialized service the parties offer, the failure to explain these basic omissions compels dismissal. *JES Prop., Inc.*

---

[17]     Plaintiffs include Medicare and Medicaid in their market definition notwithstanding the fact that those programs set their own rates.

*v. USA Equestrian, Inc*., 253 F. Supp. 2d 1273, 1283-84 (M.D. Fla. 2003) (dismissing because "Plaintiffs fail to delineate why the geographic market should be limited solely to the State of Florida and not the South/Southeast or even the United States as a whole" and failed to explain why purported product market was not part of a larger market).

Second, Plaintiffs fail to adequately allege the possession or exercise of monopoly power, which is "the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." *Duty Free Am., Inc. v. Estee Lauder Co.*, *Inc*., 797 F.3d 1248, 1264 (11th Cir. 2015). Despite general allegations regarding high barriers to entry, Plaintiffs concede that they are already mobilizing to compete with Defendants. Compl. ¶¶ 100-01. If market barriers are low enough to permit Plaintiffs' own entry into the market, they cannot plausibly claim that 21C possesses monopoly power. *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc*., No. 13-cv-80645, 2014 WL 12461350, at *3-4 (S.D. Fla. Aug. 27, 2014) (dismissing monopoly claim because plaintiff "fail[ed] to allege any barriers to entry erected by Defendants into the surfboard fin market" given that it "admit[ted] it is currently working and surviving in the … market alongside Defendants"); *see United States v. Waste Mgmt., Inc.*, 743 F.2d 976, 982-83 (2d Cir. 1984) (rejecting antitrust claim where competitors could enter the market with relative ease).

Third, Plaintiffs fail to allege the unlawful acquisition or exercise of monopoly power. Indeed, Plaintiffs allege no predatory or exclusionary acts or practices that have the effect of preventing or excluding competition. *Morris Commc'ns Corp*, 364 F.3d at 1293-94. Plaintiffs merely allege in conclusory fashion that a grab bag of ordinary business practices,

such as employing multi-specialty physicians, creating incentives, and entering contracts, constitute anticompetitive conduct.  1 HEALTH CARE AND ANTITRUST L. § 5:4 *Monopolization — Anticompetitive conduct* (2018) ("conduct that harms competitors or has exclusionary effects is not predatory if there is a 'legitimate business justification' or efficiency justification for it").

These allegations cannot state a claim.  Plaintiffs fail to explain why these are not legitimate business practices or why they have anticompetitive effects.  Courts routinely find that these kinds of practices do not raise antitrust concerns.  *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc*., 376 F.3d 1065, 1076 (11th Cir. 2004) (affirming dismissal of Section 2 claim where plaintiff alleged the defendant attempted, among other things, to gain preferential treatment from third parties); *Smilecare Dental Grp. v. Delta Dental Plan of Cal.*, 858 F. Supp. 1035, 1038 (C.D. Cal. 1994) ("Merely agreeing to be a patient's exclusive dental insurer is not, in and of itself, anticompetitive.").[18]  Highlighting their inability to explain why Defendants' conduct is anticompetitive, Plaintiffs resort to the absurd, suggesting Defendants should have their own doctors refer patients outside 21C. Compl. ¶ 78.  Defendants have no obligation to compete with themselves.  *Smilecare Dental Grp.*, 858 F. Supp. at 1039 (plaintiff "misunderstands the very definition of competitor" by suggesting defendant would "compete with itself") (emphasis removed).  Plaintiffs cannot sustain a claim of unlawful monopolization under Section 2.

---

[18]    *See Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847, 2013 WL 3242245, at *12 (N.D. Cal. June 25, 2013) (dismissing despite allegation "Aetna pressures physicians and patients to use Quest and not competing out-of-network labs, including by setting up physician bonus pools that compensate physicians based on how few out-of-network referrals they make" because, even if the alleged conduct affected competition, "Plaintiffs fail[ed] to quantify the actual market effect").

### B.      Plaintiffs Fail To Establish A Claim For Attempted Monopolization

To prove attempted monopolization, Plaintiffs must show (i) Defendants engaged in predatory or anticompetitive conduct, (ii) a specific intent on defendant's part to monopolize, and (iii) a dangerous probability of achieving monopoly power.  *Retina Assoc., P.A. v. S. Baptist Hosp. of Fla., Inc*., 105 F.3d 1376, 1384 (11th Cir. 1997).

Plaintiffs do not meet this standard.  Plaintiffs fail to establish the first element of attempted monopolization because there are no allegations that Defendants engaged in any predatory or anticompetitive conduct:  The Complaint merely recites ordinary, legitimate business practices.  *See supra* Section V(A).  Further, Plaintiffs fail to allege that Defendants specifically intended to monopolize any markets, instead asserting only the rote allegation that these business practices "all evidence Defendants' specific intent to monopolize the market."  Compl. ¶ 95.  Though courts can infer intent from conduct, even on motion to dismiss the mere recitation of conduct without explaining why that conduct creates an inference of intent is grounds for dismissal.  *Lektro-Vend Corp.*, 500 F. Supp. at 352 (court could not infer intent from mere enforcement of non-compete agreements because that action "did not disclose that (defendant's) actions were not predominantly motivated by legitimate business objectives").[19]  Finally, Plaintiffs do not allege a dangerous probability that Defendants would monopolize any markets, because Plaintiffs already concede they are about to enter the market, conclusively evidencing that Defendants cannot exert monopoly

---

[19]      *Nat'l Ass'n of Inv'rs Corp. v. Bivio, Inc.*, No. 11-cv-02435, 2013 WL 316021, at *5 (D. Colo. Jan. 28, 2013) ("Plaintiff's conclusory statement that the attempt to form this anti-competitive agreement 'constituted an attempt to establish or maintain a monopoly or joint monopoly' is insufficient to plead specific intent to monopolize.").

power, prevent other physicians from entering the market, or stop Plaintiffs from entering after their non-compete terms expire.  Compl. ¶¶100-01.[20]

## VI.  Plaintiffs' Antitrust Claims Should Be Barred As A Matter of Equity

Plaintiffs may not bring antitrust allegations where their responsibility for the conduct would be "essentially indistinguishable" from the defendant's responsibility.  *Moecker v. Honeywell Inter'l, Inc.*, 144 F. Supp. 2d 1291, 1314 (M.D. Fla. 2001) (finding that multiple circuits permit "in pari delicto … as a defense in an antitrust action"); *see also Perma Life Mufflers, Inc. v. Intern'l Parts Corp.*, 392 U.S. 134, 140 (1968) (leaving open the question whether plaintiff's antitrust claims could be barred when the plaintiff had "truly complete involvement and participation in a monopolistic scheme"), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1153 (11th Cir. 2006) (noting that the Supreme Court "explicitly left open the question whether complete involvement in an antitrust violation . . . would bar a plaintiff from bringing an antitrust claim").  The face of the Complaint and related public records provide the Court with sufficient grounds to immediately dismiss Plaintiffs' claims because if the claims had any merit (which they do not), Plaintiffs would have directed and participated in the very purported misconduct at the base of their claims.  Plaintiffs include former 21C owners and Board members (Rubenstein and Katin), a senior executive (Dosoretz), and the children of the original founder and long-running Chief Executive Officer and Board member of 21C, Dr. Daniel Dosoretz (Dosoretz

---

[20]     The Court should dismiss claims rooted in state law it if dismisses the federal claims.  *See supra* n.8.

and Fox).  Compl. ¶ 136; Ex. 5 (2014 Annual Report on Form 10-K) at 103, 121, 125.  All

Plaintiffs received substantial compensation from 21C's practice.  Exs. 1-4.  Plaintiffs cannot

act to advance and benefit from 21C's practices only to turn around, mislabel those actions as

misconduct, and assert claims against 21C.  The claims should be dismissed.[21]

### CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint against 21C should be dismissed in

its entirety.  Defendants also respectfully request attorney's fees pursuant to Florida Statute

Section 542.355(1)(k).

DATED:  April 8, 2019                                    Respectfully Submitted,

                                                        /s/Susan N. Eisenberg
John F. Terzaken (*Pro Hac*)                            Susan N. Eisenberg
Abram J. Ellis (*Pro Hac*)                              Florida Bar No. 600393
Jonathan R. Myers (*Pro Hac*)                           COZEN O'CONNOR
SIMPSON THACHER & BARTLETT LLP                          200 S. Biscayane Blvd. Suite 3000
900 G Street, N.W.                                      Miami, FL 33131
Washington, DC 20001                                    Phone: 305-704-5941
Phone: 202-636-5500                                     Facsimile: 786-220-0207
Facsimile: 202-636-5502                                 seisenberg@cozen.com
john.terzaken@stblaw.com
aellis@stblaw.com
jonathan.myers@stblaw.com

*Attorneys for Defendants 21st Century Oncology Holdings, Inc.,*
*21st Century Oncology LLC, and 21st Century Oncology, Inc.*

---

[21]     The Court need not reach the question of whether Plaintiffs have adequately pleaded a violation of Section 2 to conclude that Plaintiffs' claims are barred on this basis.  Indeed, so long as Plaintiffs' involvement in the challenged conduct was "truly complete" (as it is alleged to have been here), then the antitrust claims should be dismissed regardless of whether Plaintiffs have otherwise stated a claim.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel and parties of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>*/s/Susan N. Eisenberg*</u>
Susan N. Eisenberg

## SERVICE LIST

*Dr. Arie Pablo Dosoretz, et al. v. 21st Century Oncology Holdings, Inc., et al.*
*Case No.: 2:19-cv-00162*

**United States District Court**
**Middle District of Florida**
**Fort Myers Division**

Ernest J. Marquart
emarquart@shumaker.com
Thomas M. Wood
twoods@shumaker.com
Michele Leo Hintson
mhintson@shumaker.com
SHUMAKER, LOOP & KENDRICK
101 East Kennedy Boulevard, Suite 2800
Tampa, FL 33602
Telephone:  (813) 229-7600
Facsimile:   (813) 229-1660

Luis E. Suarez
lsuarez@bsfllp.com
Mark J. Heise
mheise@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, FL  33131
Telephone:  (305) 539-8400
Facsimile:   (305)539-1307

Stuart H. Singer, Esq.
Carl E. Goldfarb,  Esq.
cgoldfarb@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL  33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

*Attorneys for Plaintiff*
*Served via CM/ECF*

Susan N. Eisenberg, Esq.
seisenberg@cozen.com
Cozen O'Connor
200 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (305) 704-5941
Facsimile: (786) 220-0470
John Terzaken, Esquire (*Pro Hac*)
John.terzaken@stblaw.com
Abram Ellis, Esquire (*Pro Hac*)
aellis@stblaw.com
Jonathan Myers, Esquire (*Pro Hac*)
jonathan.myers@stblaw.com
Simpson Thacher & Bartlett LLP
900 G. Street, N.W.
Washington, D.C. 20001
Telephone:  (202) 636-5500
Facsimile:  (202) 636-5502

*Attorneys for Defendant*
*Served via CM/ECF*