**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| ARIE PABLO DOSORETZ, AMY FOX, JAMES RUBENSTEIN, AND MICHAEL J. KATIN, | Case No. 2:19-cv-00162 |
| Plaintiffs, | |
| v. | |
| 21ST CENTURY ONCOLOGY HOLDINGS, INC., 21ST CENTURY ONCOLOGY, LLC, AND 21ST CENTURY ONCOLOGY, INC., | |
| Defendants. | |

**DECLARATION OF JOHN F. TERZAKEN IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

I, John F. Terzaken, submit this declaration pursuant to 28 U.S.C. § 1746 and declare:

1.      I am a partner with the law firm of Simpson Thacher & Bartlett LLP, counsel for Defendants.  I respectfully submit this declaration in support of Defendants' Motion to Dismiss.  I am familiar with the facts and circumstances stated herein, based on my personal knowledge, information reported to me by attorneys working under my direction and supervision, and a review of the attached documents or files maintained by my firm.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Michael J. Katin's employment agreement and its subsequent amendments.

3.      Attached hereto as Exhibit 2 is a true and correct copy of James Rubenstein's employment agreement and its subsequent amendments.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Arie Pablo Dosoretz's employment agreement, its subsequent amendments, and his non-compete agreement.

5.      Attached hereto as Exhibit 4 is a true and correct copy of Amy Fox's employment agreement, its subsequent amendments, and her non-compete agreement.

6.      Attached hereto as Exhibit 5 is a true and correct copy of excerpts from 21st Century Oncology Holdings, Inc.'s 10-K filing with the United States Securities and Exchange Commission for the year ending December 31, 2014.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 8th day of April 2019.

_____ /s/  John F. Terzaken_____

Exhibit 1

Physician Employment Agreement

**EXECUTION COPY**

## PHYSICIAN EMPLOYMENT AGREEMENT

THIS PHYSICIAN EMPLOYMENT AGREEMENT ("Agreement") is made and entered into as of February 21, 2008 by and between 21ST CENTURY ONCOLOGY, INC., a Florida corporation ("21st Century") or its assignee and MICHAEL J. KATIN, M.D. ("Physician").

### WITNESSETH:

WHEREAS, 21st Century is a Florida corporation that operates as a multi-specialty physician group practice specializing in cancer care and treatment ("Group");

WHEREAS, 21st Century is subsidiary of Radiation Therapy Services, Inc. ("RTSI"), a Florida corporation that has ownership interests in other corporations (the "Affiliates") that operate physician practices and radiation therapy centers ("Centers");

WHEREAS, RTSI has entered into that certain Agreement and Plan of Merger (the "Merger Agreement") by and among RTSI, Radiation Therapy Investments, LLC, a Delaware limited liability company, Radiation Therapy Services Holdings, Inc., a Delaware corporation ("Holdings") and RTS MergerCo, Inc., a Florida corporation ("Merger Sub"), dated as of October 19, 2007, pursuant to which Merger Sub will merge with and into RTSI (the "Merger"), with RTSI as the surviving corporation in the Merger and a wholly-owned subsidiary of Holdings;

WHEREAS, Physician is a radiation oncologist who is licensed to practice medicine in Florida;

WHEREAS, Physician and the Company are currently parties to an Physician Agreement dated as of April, 2004, which will be superseded by this Agreement; and

WHEREAS, 21st Century wishes to engage Physician to provide medical services as a radiation oncologist according to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the premises and of the promises hereinafter contained, the parties agree as follows:

**1.     TERM.** Subject to the conditions set forth below, Physician agrees to provide services as a radiation oncologist at locations specified pursuant to this Agreement to such persons as are accepted by 21st Century as patients of the Group. Unless terminated earlier by either party as provided herein, this Agreement shall be for three (3) years beginning the date hereof, and shall be automatically renewed for consecutive two (2) year terms thereafter on the anniversary date of this Agreement unless either party gives written notice to the other party at least one hundred twenty (120) days in advance of the renewal date of its intent not to renew the Agreement.

**2.     ACCEPTANCE BY PHYSICIAN.** Physician agrees to provide medical services for the Group on the terms and conditions herein set forth. Physician shall practice full-time at such Group practice locations as are mutually agreed. Throughout the term of this Agreement and any renewal period hereof, Physician will be licensed to practice medicine in the State of Florida and/or such other states as mutually agreed. Physician agrees that in the rendition of such professional services for the Group, Physician will comply with the reasonable policies, standards and regulations of 21st Century established from time to time. This Agreement is exclusive in favor of 21st Century and Physician may not perform services for other providers of radiation therapy or oncology services without the prior written approval of 21st Century. Nothing in this Agreement shall be deemed to preclude Physician from (i) serving or

continuing to serve as an officer or on the Board of Directors of entities that do not compete with 21st Century to the extent such service does not materially interfere with Physician's performance under this Agreement or (ii) serving or continuing to serve on the board or advisory committees of medical, charitable or other similar organizations.

       **3.**    **COMPENSATION.**  21st Century agrees to pay Physician for the services provided hereunder a base annual salary of Seven Hundred Thousand Dollars ($700,000) ("Base Salary"). 21st Century shall pay all medical malpractice insurance premiums related to Physician's employment including "tail" coverage after termination or expiration of this Agreement.

       **4.**    **TERMINATION.**

       (a)    This agreement will automatically terminate upon Physician's death. Upon Physician's death, 21st Century agrees to pay to Physician's designated beneficiary as salary continuation or to Physician one (1) year of Physician's monthly Base Salary, plus his Base Salary accrued and unpaid through the date of termination ( the Physician's "Accrued Compensation").

       (b)    21st Century may terminate Physician if Physician has been unable to attend to his duties for at least one-hundred and twenty (120) days because of a medically diagnosable physical or mental condition, and has received a written opinion from a physician acceptable to the Chief Executive Officer that such condition prevents the Physician from resuming full performance of his duties at such time and during the succeeding 120 days or is likely to continue for an indefinite period ("Disability"), then 21st Century shall have no liability to Physician other than for such Physician's Accrued Compensation shall be entitled to receive the Accrued Compensation and Physician shall be entitled to receive any disability benefits payable pursuant to any long-term disability plan or other disability program or insurance policies maintained or provided by the Company.

       (c)    If Physician voluntarily gives written notice at least ninety (90) days in advance of the last day of any term hereunder to terminate this Agreement at the expiration of such term and continues to render services as provided herein until at the end of the term, 21st Century agrees to pay to Physician as severance pay two (2) months of Physician's monthly Base Salary for the immediately preceding twelve month period, plus such Physician's Accrued Compensation. Said severance pay shall be in addition to the compensation earned by Physician during the notice period required herein. Physician must render services as provided hereunder during the 90 day period. The required notice and continued service is of the essence, and if Physician does not give the required notice and continue to be available for full-time exclusive service to 21st Century pursuant to this Agreement during the notice period, Physician shall not be entitled to any severance pay.

       (d)    If Physician voluntarily terminates his employment for any reason prior to the end of a term or without giving notice in accordance with section 4(c) of this Agreement, 21st Century shall have no liability to Physician other than for such Physician's Accrued Compensation.

       (e)    21st Century may terminate this Agreement for "Cause" upon the occurrence of any of the following events:

       (i)    A final and unappealable suspension, revocation, or cancellation of Physician's license or right to perform medical services in the State of Florida, other than for any revocation or cancellation of Physician's license as a result of failure to renew or other clerical error that is cured within 30 days following notice of cancellation or revocation to Physician;

(ii)     The final and unappealable placing or imposing of any restrictions or limitations, by any governmental authority having jurisdiction over Physician, upon Physician so that Physician cannot engage in the medical services contemplated hereunder, other than as a result of any clerical error that is cured within 30 days following notice of cancellation or revocation to Physician;

(iii)    Physician shall willfully or with gross negligence fail or refuse to materially comply with the reasonable policies, standards, and regulations of RTSI, 21st Century and/or any of their subsidiaries or affiliates (the "Company Group") from time to time established or engage in gross misconduct in carrying out Physician's material duties resulting in material economic harm to 21st Century;

(iv)    Physician is convicted of or enters a plea of guilty or no contest or similar plea with respect to, a felony;

(v)     Physician is convicted of or enters a plea of guilty or no contest or similar plea with respect to, any lesser crime or offense (x) committed in connection with his duties hereunder, (y) involving fraud, dishonesty or moral turpitude or (z) that causes the Company Group a substantial and material financial detriment;

(vi)    Physician is terminated or excluded from the Medicare or Medicaid program as a participating physician;

(vii) any action by Physician involving willful disloyalty to the Company Group, such as embezzlement, fraud, misappropriation of corporate assets or a breach of the covenants set forth in Sections 6 and 20 below; and

(viii) substantial and repeated failure, refusal or inability (except where due to illness or Disability) to perform Physician's material duties hereunder.

Notwithstanding the foregoing, no termination pursuant to subsection (iii) and (viii) shall be treated as termination for Cause unless 21st Century has provided the Physician with written notice specifying in reasonable detail the alleged Cause for termination and the Cause is not cured within 30 days after the date of such notice.  Upon termination with Cause, 21st Century shall have no liability to Physician other than for such Physician's Accrued Compensation.

**5.      SEVERANCE PAYMENTS.**  If 21st Century terminates Physician without Cause, 21st Century shall pay Physician his Accrued Compensation and shall also be obligated to make a series of monthly payments to the Physician for a period of twelve (12) months immediately following such termination.  Each monthly payment shall be equal to one-twelfth (1/12th) of the Physician's annual Base Salary, as in effect on the date of termination.

**6.      NON-COMPETITIVE AND RESTRICTIVE AGREEMENTS.**

(a)     During the term of this Agreement and any renewal period, Physician shall not undertake any professional service except as directed and authorized by 21st Century and shall not engage in any profession other than the rendition of the professional services as directed by 21st Century.

(b)     In consideration of the transactions contemplated hereby and the payment of the Merger Consideration (as defined in the Merger Agreement), in the event of the termination of this Agreement for any reason, Physician agrees not to (x) directly or indirectly engage in the practice of radiation therapy or oncology, or otherwise compete with the Company Group, or any of its physician

providers, by practicing as a radiation therapist or oncologist (i) at any hospital in which physician providers of the Company Group regularly admit or treat patients, (ii) within any county in which the Company Group operates a Center, or (iii) or within a radius of twenty-five (25) miles of any location where the Company Group provides physician or radiation therapy services or operates a Center or (y) (i) engage in any business activities for himself or on behalf of any enterprise in any capacity or own any interest in any entity which competes or is competitive with the Company Group in the business of organizing, establishing, developing, providing or managing radiation therapy services or services ancillary thereto, in any state in which the Company Group and/or any of its joint ventures then operates or has plans to operate as of the date of termination of this Agreement, (ii) interfere or disrupt or attempt to interfere or disrupt, the relationships between the Company Group and/or any of its joint ventures and any patient, referral source or supplier or other person having business relationships with the Company Group and/or any of its joint ventures, (iii) solicit, induce or hire, or attempt to solicit, induce or hire, any employee of the Company Group and/or any of its joint ventures or (iv) publish or make any disparaging statements about the Company Group and/or any of its joint ventures or any of their directors, officers or employees, under circumstances where it is reasonably foreseeable that the statements will be made public (the activities described in clauses (x) and (y) above, collectively, "Prohibited Activities") for a period beginning on the date of this Agreement and ending on the later of (a) the fifth anniversary of this Agreement and (b) three (3) years after the date of such actual termination of this Agreement. The purpose of this covenant is to protect RTSI and 21st Century from the irreparable harm they will suffer if Physician competes with the Company Group, and having been introduced to the Company Group's personnel and patients and after learning special medical procedures used by the Company Group's physician providers, the Company Group's business procedures, office and practice policies, and the special and confidential professional procedures developed by the Company Group.

(c)     The parties agree that in the event of any breach or attempted breach of any of the covenants set out in section 6(b) (the "Covenant Not to Compete"), 21st Century and RTSI will be entitled to equitable relief by way of injunction or otherwise, in addition to any remedy at law which may be available. The parties agree that any violation or threatened violation by Physician of the Covenant Not to Compete will cause 21st Century and RTSI to suffer irreparable harm. The parties agree that 21st Century and RTSI's remedy of an injunction is not the exclusive remedy for breach of the Covenant Not to Compete and that a court may grant such additional relief as is reasonable.

(d)     Physician acknowledges and confirms that (a) the restrictive covenants contained in Sections 6 and 20 hereof are reasonably necessary to protect the legitimate business interests of 21st Century, RTSI and the other entities within the Company Group, and Holdings' interests as the purchaser of RTSI for substantial consideration, a significant portion of which was paid to Physician and (b) the restrictions contained in Sections 6 and 20 hereof (including without limitation the length of the term of the provisions of Sections 6 and 20 hereof) are not overbroad, overlong, or unfair and are not the result of overreaching, duress or coercion of any kind. Physician further acknowledges and confirms that his full and faithful observance of each of the covenants contained in Sections 6 and 20 hereof will not cause him any undue hardship, financial or otherwise, and that enforcement of each of the covenants contained herein will not impair his ability to obtain employment commensurate with his abilities and on terms fully acceptable to him or otherwise to obtain income required for the comfortable support of him and his family and the satisfaction of the needs of his creditors. Physician acknowledges and confirms that his special knowledge of the business of the Company Group is such as would cause the Company Group serious injury or loss if he were to use such ability and knowledge to the benefit of a competitor or were to compete with the Company Group in violation of the terms of Sections 6 and 20. Physician further acknowledges that the restrictions contained in Sections 6 and 20 hereof are intended to be, and shall be, for the benefit of and shall be enforceable by, 21st Century's and RTSI's successors and assigns.

(e)     In the event the Covenant Not to Compete shall be determined by a court of competent jurisdiction to be unenforceable by reason of its geographic or temporal restrictions being too great, or by reason that the range of activities covered is too great, or for any other reason, this Section 6 shall be interpreted to extend over the maximum geographic area, period of time, range of activities or other restrictions as to which it may be enforceable.

(f)     RTSI shall be a third party beneficiary of this Section 6 to the extent permitted by law.

**7.     21ST CENTURY'S RIGHT TO INCOME.**  All fees, compensation, monies, and other things of value charged by 21st Century and received or realized as a result of the rendition of medical services by Physician pursuant to this Agreement shall belong to and be paid and delivered to 21st Century.

**8.     PHYSICIAN EXPENSES.**  21st Century shall pay the reasonable business expenses as are incurred by Physician upon presentation by Physician of an itemized account of such expenditures.

**9.     VACATION AND TIME AWAY.**  Physician shall be entitled to no less than six (6) weeks vacation with pay during each year of this Agreement.  Physician may take additional time away from the practice to attend professional meetings and seminars with the reasonable expenses paid for by 21st Century with the prior approval of 21st Century.  All time away from practice, including time for vacation and continuing medical education, shall be scheduled with 21st Century.  Physician shall be responsible for arranging coverage during Physician's absences for vacation and continuing medical education and shall inform 21st Century of such coverage arrangements.

**10.     NOTICES.**  Any notice required or permitted to be given pursuant to this Agreement shall be sufficient if in writing and if sent by registered mail to either party at its last known residence.

**11.     GOVERNING LAW.**  This Agreement shall be governed by the laws of the State of Florida.

**12.     ENTIRE AGREEMENT.**  This instrument contains the entire agreement of the parties regarding Physician's provision of medical services at the Centers and supersedes all previous negotiations, discussions, and agreements between the parties.  Any amendments or modifications to this Agreement shall be made in writing only and shall be by agreement of 21st Century and Physician.

**13.     ASSIGNMENT.**  This Agreement shall be binding upon and inure to the benefit of the heirs and representatives of the parties.  This Agreement may not be assigned by Physician without the prior written consent 21st Century.

**14.     SEVERABILITY.**  In the event that any paragraph or clause of this Agreement is held or declared by a final and unappealable decision to be void, illegal, or unenforceable for any reason, the offending paragraph or clause shall, if possible, be reformed by the authority making such decision in such manner as will implement, to the fullest extent legally permissible, the expressed intentions of the parties hereto without illegality or unenforceability.   If such reformation is not possible, the offending paragraph or clause shall be stricken and all other paragraphs and clauses of this Agreement shall nevertheless remain in full force and effect; provided, however, that if striking such offending clause or paragraph would result in a substantial change in the contractual relationship between the parties, thereby depriving either or both of the parties of the benefit of the fundamental economic bargain herein set forth, this Agreement shall become voidable upon demand of the party whose interests are thus impaired.

15.     **HEADINGS.** The headings contained in this Agreement are included for convenience only and no such heading shall in any way alter the meaning of any provision.

16.     **WAIVER.** The failure of either party to insist upon strict adherence to any obligation of this Agreement shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement. Any waiver must be in writing.

17.     **COUNTERPARTS.** This Agreement may be executed in two (2) counterparts, each of which shall be considered an original.

18.     **SUBMISSION TO JURISDICTION.** Any suit, action or proceeding with respect to this Agreement, or any judgment entered by any court in respect of any thereof, shall be brought in any court of competent jurisdiction in the State of Florida, and each of the Company and Physician hereby submit to the exclusive jurisdiction of such courts for the purpose of any such suit, action, proceeding or judgment. The Physician and the Company hereby irrevocably each waive any objections which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement brought in any court of competent jurisdiction in the State of Florida, and hereby further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in any inconvenient forum

19.     **WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

20.     **PROTECTION OF CONFIDENTIAL INFORMATION.** Physician agrees that he will keep all confidential and proprietary information of the Company Group or relating to its business (including, but not limited to, information regarding the Company Group's customers, pricing policies, methods of operation, proprietary computer programs and trade secrets) confidential, and that he will not (except with 21st Century's prior written consent), while in the employ of 21st Century or at any time thereafter, disclose any such confidential information to any person, firm, corporation, association or other entity, other than in furtherance of his duties hereunder, and then only to those with a "need to know." Physician shall not make use of any such confidential information for his own purposes or for the benefit of any person, firm, corporation, association or other entity (except any entity within the Company Group) under any circumstances during or at any time after the term of his employment. The foregoing shall not apply to any information which is already in the public domain, or is generally disclosed by the Company Group or is otherwise in the public domain at the time of disclosure, except if such information is in the public domain as a result of Physician's actions in contravention of this Section 20.

Physician recognizes that because his work for 21st Century will bring him into contact with confidential and proprietary information of the Company Group, the restrictions of this Section 20 are required for the reasonable protection of the Company Group and the investments by Holdings, and for 21st Century's reliance on and confidence in Physician.

**IN WITNESS WHEREOF,** the parties have set their hands and seals the day and year first above written.

**IN WITNESS WHEREOF**, the parties have set their hands and seals the day and year first above written.

21ST CENTURY ONCOLOGY, INC.

By: _____

Title: _____
Daniel E. Dosoretz, MD
President - CEO
Radiation Therapy Services, Inc.
**"PHYSICIAN"** 21st Century Oncology, Inc.

_____
MICHAEL J. KATIN, M.D.

Amendment to Employment Agreement

**Execution Copy**

## AMENDMENT TO EMPLOYMENT AGREEMENT

This Amendment to Physician's Employment Agreement (the "Amendment") dated as of February ___, 2010 is by and between 21st Century Oncology, LLC f/k/a 21st Century Oncology, Inc. (the "Employer") and Michael J. Katin, M.D. (the "Physician").

### WITNESSETH

**WHEREAS,** Employer and Physician are parties to that certain Employment Agreement, dated February 21, 2008 (the "Employment Agreement");

**WHEREAS,** the parties desire to amend the Employment Agreement in accordance with the terms and conditions set forth below.

**NOW THEREFORE**, intending to be legally bound and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Section 3.** Section 3 of the Employment Agreement is hereby amended to delete the reference made to "Seven Hundred Thousand Dollars ($700,000.00) and to replace it with "Two Hundred Thousand Dollars ($200,000.00)".

2.      **Effective Date**. The parties acknowledge and agree that the effective date of the foregoing amendment shall be March 1, 2010.

3.      **No Further Amendments**.   The parties agree that all provisions of the Employment Agreement shall remain in full force and effect except when contradicted by this Amendment, in which case this Amendment shall control.

4.      **Counterparts**.   This Amendment may be signed in one or more counterparts and by facsimile or electronic mail, all of which shall be considered one and the same agreement.

### [SIGNATURE PAGE TO FOLLOW]

8586 v1

Execution Copy

       **IN WITNESS WHEREOF**, Employer and Physician have executed this instrument effective as of the date set forth herein.

**21ˢᵗ CENTURY ONCOLOGY, LLC**

By:_____

Name:

Title:

       Daniel Dosoretz, M.D.

         President

**PHYSICIAN:**

_____

Michael J. Katin, M.D.

Second Amendment to Employment Agreement

Execution Copy

## SECOND AMENDMENT TO EMPLOYMENT AGREEMENT

This Second Amendment to Physician's Employment Agreement (the "Amendment") dated as of August ___, 2014 is by and between 21st Century Oncology, LLC f/k/a 21st Century Oncology, Inc. (the "Employer") and Michael J. Katin, M.D. (the "Physician").

### WITNESSETH

**WHEREAS,** Employer and Physician are parties to that certain Employment Agreement, dated February 21, 2008 as amended by that certain Amendment to Employment Agreement dated February 2010 (collectively the "Employment Agreement");

**WHEREAS,** the parties desire to amend the Employment Agreement in accordance with the terms and conditions set forth below.

**NOW THEREFORE**, intending to be legally bound and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.  **Section 3.** Section 3 of the Employment Agreement is hereby amended to delete the reference made to "Two Hundred Thousand Dollars ($200,000)" and to replace it with "Fifty Thousand Dollars ($50,000)".

2.  **Effective Date**. The parties acknowledge and agree that the effective date of the foregoing amendment shall be August 10, 2014.

3.  **No Further Amendments**.  The parties agree that all provisions of the Employment Agreement shall remain in full force and effect except when contradicted by this Amendment, in which case this Amendment shall control.

4.  **Counterparts**. This Amendment may be executed in any number of counterparts, including facsimile or an e-mail of a PDF file containing a copy of the signature page of the person executing this document, each of which shall be an original, but all of which together shall constitute one in the same instrument.

### [SIGNATURE PAGE TO FOLLOW]

104804 v1

Execution Copy

**IN WITNESS WHEREOF**, Employer and Physician have executed this instrument effective as of the date set forth herein.

**21st CENTURY ONCOLOGY, LLC**

By:_____

Name:

Title:      **Daniel Dosoretz, M.D.**
            **Vice President**

**PHYSICIAN:**

Michael J. Katin, M.D.

Exhibit 2

Physician Employment Agreement

**EXECUTION COPY**

**PHYSICIAN EMPLOYMENT AGREEMENT**

THIS PHYSICIAN EMPLOYMENT AGREEMENT ("Agreement") is made and entered into as of February 21, 2008 by and between 21ST CENTURY ONCOLOGY, INC., a Florida corporation ( "21st Century") or its assignee and JAMES H. RUBENSTEIN, M.D. ("Physician").

**WITNESSETH:**

WHEREAS, 21st Century is a Florida corporation that operates as a multi-specialty physician group practice  specializing in cancer care and treatment ("Group");

WHEREAS, 21st Century is subsidiary of Radiation Therapy Services, Inc. ("RTSI"), a Florida corporation that has ownership interests in other corporations (the "Affiliates") that operate physician practices and radiation therapy centers ("Centers");

WHEREAS, RTSI has entered into that certain Agreement and Plan of Merger (the "Merger Agreement") by and among RTSI, Radiation Therapy Investments, LLC, a Delaware limited liability company, Radiation Therapy Services Holdings, Inc., a Delaware corporation ("Holdings") and RTS MergerCo, Inc., a Florida corporation ("Merger Sub"), dated as of October 19, 2007, pursuant to which Merger Sub will merge with and into RTSI (the "Merger"), with RTSI as the surviving corporation in the Merger and a wholly-owned subsidiary of Holdings;

WHEREAS, Physician is a radiation oncologist who is licensed to practice medicine in Florida;

WHEREAS, Physician is concurrently herewith entering into an Executive Employment Agreement (the "Executive Agreement") with Holdings and RTSI;

WHEREAS, the Physician and the Company are currently parties to an Physician Agreement dated as of April, 2004, which will be superseded by this Agreement; and

WHEREAS, 21st Century wishes to engage Physician to provide medical services as a radiation oncologist according to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the premises and of the promises hereinafter contained, the parties agree as follows:

      **1.**    **TERM.**  Subject to the conditions set forth below, Physician agrees to provide services as a radiation oncologist at locations specified pursuant to this Agreement to such persons as are accepted by 21st Century as patients of the Group.  Unless terminated earlier by either party as provided herein, this Agreement shall be for three (3) years beginning the date hereof, and shall be automatically renewed for consecutive two (2) year terms thereafter on the anniversary date of this Agreement unless either party gives written notice to the other party at least one hundred twenty (120) days in advance of the renewal date of its intent not to renew the Agreement.

      **2.**    **ACCEPTANCE BY PHYSICIAN.**  Physician agrees to provide medical services for the Group on the terms and conditions herein set forth.  Physician shall practice at such locations as are mutually agreed and it is contemplated that Physician will work up to two (2) days per week under this Agreement while the Executive Agreement is in effect.  Throughout the term of this Agreement and any renewal period hereof, Physician will be licensed to practice medicine in the State of Florida and/or such other states as mutually agreed.  Physician agrees that in the rendition of such professional services for the

Group, Physician will comply with the reasonable policies, standards and regulations of 21st Century established from time to time. This Agreement is exclusive in favor of 21st Century and Physician may not perform services for other providers of radiation therapy or oncology services without the prior written approval of 21st Century. Nothing in this Agreement shall be deemed to preclude Physician from (i) serving or continuing to serve as an officer or on the Board of Directors of entities that do not compete with 21st Century to the extent such service does not materially interfere with Physician's performance under this Agreement or (ii) serving or continuing to serve on the board or advisory committees of medical, charitable or other similar organizations.

**3.     COMPENSATION.**  21st Century agrees to pay Physician for the services provided hereunder a base annual salary of Three Hundred Thousand Dollars ($300,000) ("Base Salary"). 21st Century shall pay all medical malpractice insurance premiums related to Physician's employment including "tail" coverage after termination or expiration of this Agreement.

**4.     TERMINATION.**

(a)     The Physician may at any time voluntarily terminate this Agreement prior to the end of the term with or without giving notice.

(b)     21st Century may terminate this Agreement for "Cause" upon the occurrence of any of the following events:

(i)     A final and unappealable suspension, revocation, or cancellation of Physician's license or right to perform medical services in the State of Florida, other than for any revocation or cancellation of Physician's license as a result of failure to renew or other clerical error that is cured within 30 days following notice of cancellation or revocation to Physician;

(ii)     The final and unappealable placing or imposing of any restrictions or limitations, by any governmental authority having jurisdiction over Physician, upon Physician so that Physician cannot engage in the medical services contemplated hereunder, other than as a result of any clerical error that is cured within 30 days following notice of cancellation or revocation to Physician;

(iii)     Physician shall willfully or with gross negligence fail or refuse to materially comply after reasonable notice with the reasonable policies, standards, and regulations of 21st Century from time to time established or engage in gross misconduct resulting in material economic harm to 21st Century;

(iv)     Physician is convicted of a felony;

(v)     Physician is convicted of a crime or offense committed in connection with his duties hereunder; or

(vi)     Physician is terminated or excluded from the Medicare or Medicaid program as a participating physician.

Notwithstanding the foregoing, no termination pursuant to subsection (iii) shall be treated as termination for Cause unless 21st Century has provided the Physician with written notice specifying in reasonable detail the alleged Cause for termination and the Cause is not cured within 30 days after the date of such notice.

(c)     21st Century may terminate this Agreement without Cause at any time.

(d)     21st Century may terminate this Agreement if Physician has been unable to attend to his duties for at least one hundred and twenty (120) days because of a medically diagnosable physical or mental condition, and has received a written opinion from a physician acceptable to 21st Century that such condition prevents Physician from resuming full performance of his duties at such time and during the succeeding 120 days or is likely to continue for an indefinite period.

(e)     This agreement will automatically terminate upon Physician's death.

(f)     If the Executive Agreement is terminated for any reason, 21st Century shall have the right, but not the obligation to terminate this Agreement, without any liability or obligation to the Physician, other than any Accrued Compensation payable pursuant to Section 5.

(g)     If the Executive Agreement is terminated for any reason, but this Agreement is not terminated, this Agreement shall remain in full force and effect except that (i) the Physician's Base Salary shall be increased to Seven Hundred Thousand Dollars ($700,000), (ii) Physician shall be required to work five (5) days per week rather than up to two (2) days per week and (iii) Physician shall be eligible to participate in such other bonus and benefit plans afforded other senior physicians of the Company and receive comparable fringe benefits to such other senior physicians..

**5.     TERMINATION PAYMENTS.** If this Agreement is terminated for any reason during the term of this Agreement, the Physician shall be entitled to receive his Base Salary accrued and unpaid through the date of termination ( the Physician's "Accrued Compensation").

## 6.     NON-COMPETITIVE AND RESTRICTIVE AGREEMENTS.

(a)     During the term of this Agreement and any renewal period, Physician shall not undertake any professional service except as directed and authorized by 21st Century and shall not engage in any profession other than the rendition of the professional services as directed by 21st Century, other than pursuant to the Executive Agreement.

(b)     In consideration of the transactions contemplated hereby and the payment of the Merger Consideration (as defined in the Merger Agreement), a substantial portion of which was paid to Physician, in the event of the termination of this Agreement for any reason, Physician agrees not to directly or indirectly engage in the practice of radiation therapy or oncology, or otherwise compete with 21st Century, or any of its physician providers, by practicing as a radiation therapist or oncologist (i) at any hospital in which physician providers of 21st Century regularly admit or treat patients, (ii) within any county in which 21st Century, RTSI or any of their Affiliates operate a Center, or (iii) within a radius of twenty-five (25) miles of any location where 21st Century provides physician or radiation therapy services, or 21st Century, RTSI or any of their Affiliates operate a Center, for a period beginning on the date of this Agreement and ending on the later of (a) the fifth anniversary of this Agreement and (b) three (3) years after the date of such actual termination of this Agreement. Notwithstanding anything to the contrary, the Physician may practice medicine, individually or as part of a group practice of five (5) or less radiation oncologists following the termination or expiration of this Agreement; provided, that neither the Physician's individual nor group practice (i) has affiliated relationships with any other physician practices or (ii) has more than one geographic location. The purpose of this covenant is to protect 21st Century from the irreparable harm it will suffer if Physician competes with 21st Century, and having been introduced to 21st Century's personnel and patients and after learning special medical procedures used by 21st Century's physician providers, 21st Century's business procedures, office and practice policies, and the special and confidential professional procedures developed by 21st Century.

(c)     The parties agree that in the event of any breach or attempted breach of any of the covenants set out in section 6(b) (the "Covenant Not to Compete"), 21st Century will be entitled to equitable relief by way of injunction or otherwise, in addition to any remedy at law which may be available. The parties agree that any violation or threatened violation by Physician of the Covenant Not to Compete will cause 21st Century to suffer irreparable harm. The parties agree that 21st Century's remedy of an injunction is not the exclusive remedy for breach of the Covenant Not to Compete and that a court may grant such additional relief as is reasonable.

(d)     In the event the Covenant Not to Compete shall be determined by a court of competent jurisdiction to be unenforceable by reason of its geographic or temporal restrictions being too great, or by reason that the range of activities covered is too great, or for any other reason, this Section 6 shall be interpreted to extend over the maximum geographic area, period of time, range of activities or other restrictions as to which it may be enforceable.

(e)     RTSI shall be a third party beneficiary of this Section 6 to the extent permitted by law.

7.     **21ST CENTURY'S RIGHT TO INCOME.**  All fees, compensation, monies, and other things of value charged by 21st Century and received or realized as a result of the rendition of medical services by Physician pursuant to this Agreement shall belong to and be paid and delivered to 21st Century.

8.     **PHYSICIAN EXPENSES.**  21st Century shall pay the reasonable business expenses as are incurred by Physician upon presentation by Physician of an itemized account of such expenditures.

9.     **VACATION AND TIME AWAY.**  Physician shall be entitled to no less than five (5) weeks vacation (in the aggregate under this Agreement and the Executive Agreement) with pay during each year of this Agreement.  Physician may take additional time away from the practice to attend professional meetings and seminars with the reasonable expenses paid for by 21st Century with the prior approval of 21st Century.  All time away from practice, including time for vacation and continuing medical education, shall be scheduled with 21st Century.  Physician shall be responsible for arranging coverage during Physician's absences for vacation and continuing medical education and shall inform 21st Century of such coverage arrangements.

10.     **NOTICES.**  Any notice required or permitted to be given pursuant to this Agreement shall be sufficient if in writing and if sent by registered mail to either party at its last known residence.

11.     **GOVERNING LAW.**  This Agreement shall be governed by the laws of the State of Florida.

12.     **ENTIRE AGREEMENT.**  This instrument contains the entire agreement of the parties regarding Physician's provision of medical services at the Centers and supersedes all previous negotiations, discussions, and agreements between the parties.  Any amendments or modifications to this Agreement shall be made in writing only and shall be by agreement of 21st Century and Physician.

13.     **ASSIGNMENT.**  This Agreement shall be binding upon and inure to the benefit of the heirs and representatives of the parties.  This Agreement may not be assigned by Physician without the prior written consent 21st Century.

14.     **SEVERABILITY.**  In the event that any paragraph or clause of this Agreement is held or declared by a final and unappealable decision to be void, illegal, or unenforceable for any reason, the offending paragraph or clause shall, if possible, be reformed by the authority making such decision in such

manner as will implement, to the fullest extent legally permissible, the expressed intentions of the parties hereto without illegality or unenforceability.   If such reformation is not possible, the offending paragraph or clause shall be stricken and all other paragraphs and clauses of this Agreement shall nevertheless remain in full force and effect; provided, however, that if striking such offending clause or paragraph would result in a substantial change in the contractual relationship between the parties, thereby depriving either or both of the parties of the benefit of the fundamental economic bargain herein set forth, this Agreement shall become voidable upon demand of the party whose interests are thus impaired.

      **15.**    **HEADINGS.**  The headings contained in this Agreement are included for convenience only and no such heading shall in any way alter the meaning of any provision.

      **16.**    **WAIVER.**  The failure of either party to insist upon strict adherence to any obligation of this Agreement shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.  Any waiver must be in writing.

      **17.**    **COUNTERPARTS.**  This Agreement may be executed in two (2) counterparts, each of which shall be considered an original.

      **18.**    **SUBMISSION TO JURISDICTION.**  Any suit, action or proceeding with respect to this Agreement, or any judgment entered by any court in respect of any thereof, shall be brought in any court of competent jurisdiction in the State of Florida, and each of the Company and Physician hereby submit to the exclusive jurisdiction of such courts for the purpose of any such suit, action, proceeding or judgment. The Physician and the Company hereby irrevocably each waive any objections which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement brought in any court of competent jurisdiction in the State of Florida, and hereby further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in any inconvenient forum

      **19.**    **WAIVER OF JURY TRIAL.**  **EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

      **IN WITNESS WHEREOF**, the parties have set their hands and seals the day and year first above written.

IN WITNESS WHEREOF, the parties have set their hands and seals the day and year first above written.

21ST CENTURY ONCOLOGY, INC.

By: _____

Title: PRESIDENT

"PHYSICIAN"

_____
JAMES L. RUBENSTEIN, M.D.

Amendment to Employment Agreement

**Execution Copy**

## AMENDMENT TO EMPLOYMENT AGREEMENT

This Amendment to Physician's Employment Agreement (the "Amendment") dated as of February ___, 2010 is by and between 21st Century Oncology, LLC f/k/a 21st Century Oncology, Inc. (the "Employer") and James H. Rubenstein, M.D. (the "Physician").

### WITNESSETH

**WHEREAS,** Employer and Physician are parties to that certain Employment Agreement, dated February 21, 2008 (the "Employment Agreement");

**WHEREAS,** the parties desire to amend the Employment Agreement in accordance with the terms and conditions set forth below.

**NOW THEREFORE,** intending to be legally bound and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Section 3.** Section 3 of the Employment Agreement is hereby amended to delete the reference made to "Three Hundred Thousand Dollars ($300,000.00) and to replace it with "Two Hundred Thousand Dollars ($200,000.00)".

2.    **Effective Date**. The parties acknowledge and agree that the effective date of the foregoing amendment shall be March 1, 2010.

3.    **No Further Amendments**.    The parties agree that all provisions of the Employment Agreement shall remain in full force and effect except when contradicted by this Amendment, in which case this Amendment shall control.

4.    **Counterparts**.    This Amendment may be signed in one or more counterparts and by facsimile or electronic mail, all of which shall be considered one and the same agreement.

### [SIGNATURE PAGE TO FOLLOW]

9323 v1

**IN WITNESS WHEREOF**, Employer and Physician have executed this instrument effective as of the date set forth herein.

**21st CENTURY ONCOLOGY, LLC**

By: _____

Name:

Title:     ‌Daniel Dosoretz, M.D.
           President

**PHYSICIAN:**

_____

James H. Rubenstein, M.D.

Second Amendment to Employment Agreement

## SECOND AMENDMENT TO EMPLOYMENT AGREEMENT

This Second Amendment to Physician Employment Agreement (the "Amendment") dated as of September **24**, 2014 is by and between 21st Century Oncology, LLC f/k/a 21st Century Oncology, Inc. (the "Employer") and James H. Rubenstein, M.D. (the "Physician").

### WITNESSETH

WHEREAS, Employer and Physician are parties to that certain Physician Employment Agreement, dated February 21, 2008, as amended by that certain Amendment to Employment Agreement effective March 1, 2010 (collectively, the "Employment Agreement");

WHEREAS, the parties desire to amend the Employment Agreement in accordance with the terms and conditions set forth below.

NOW THEREFORE, intending to be legally bound and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Section 1. Section 1 of the Employment Agreement is hereby amended to delete the second sentence of Section 1 in its entirety and replace it with the following:

"Unless terminated earlier by either party as provided herein, this Agreement shall be for three (3) years beginning on July 27, 2014, and shall be automatically renewed for consecutive two (2) year terms thereafter on the anniversary date of this Amendment unless either party gives written notice to the other party at least one hundred twenty (120) days in advance of the renewal date of its intent not to renew the Agreement."

2. Section 3. Section 3 of the Employment Agreement is hereby amended to delete Section 3 in its entirety and to replace it with the following.

"3. Compensation. In consideration for the services of the Physician hereunder, the Employer shall pay to the Physician compensation (the "Compensation") consisting of regular periodic payments (the "Salary") and bonuses as more particularly provided herein:

(a) Salary. Physician shall be entitled to receive an annual Salary of Two Hundred Thousand Dollars ($200,000.00) or the pro rata portion thereof for any portion of a year services are rendered. During each year of the Employment Term, the Physician's annual Salary shall be paid in convenient installments, without interest and in arrears, in accordance with the Employer's customary payroll practices, but not less frequently than monthly.

(b) Production Bonus. In addition to Salary, Physician shall be entitled to receive an annual production bonus (the "Production Bonus") equal to the product of: (a) the number of global relative value units ("RVUs") attributable to medical services

102525 v5

performed by and/or ordered by Physician over and above One Hundred Thousand (100,000) RVUs per contract year, multiplied by (b) Two Dollars ($2.00), provided that the Production Bonus shall not exceed the amount of Two Hundred Thousand Dollars ($200,000) per contract year. The Production Bonus shall be calculated on an annual contract year basis. The Production Bonus, if earned, shall be paid in the third pay period following the end of the contract year in which it was earned. The Production Bonus shall be subject to required withholdings and deductions, in accordance with Employer's payroll policies.

(c) "The Parties acknowledge and agree that in the event of a Change of Control of the Company, a material deleveraging of the Company or a material refinancing or recapitalization (including but not limited to recapitalization involving the issuance of common or preferred stock) of the Company, the Physician's Salary and Production Bonus shall be increased to an amount that is comparable to that of other senior physicians with similar experience. For purposes of this Agreement, "Change of Control" shall mean the consummation of a transaction, whether in a single transaction or in a series of related transactions that are consummated contemporaneously (or consummated pursuant to contemporaneous agreements), with any other person or group of related persons on an arm's-length basis, pursuant to which such person or group of related persons (i) acquires (whether by merger, stock purchase, recapitalization, reorganization, redemption, exchange of debt for capital stock, issuance of capital stock or otherwise) more than 50 percent of the Company's capital stock outstanding , or (ii) acquires assets constituting all or substantially all of the assets of the Company or the Company's Subsidiaries on a consolidated basis.'

3. Reimbursement of Attorneys' Fees. The Employer shall reimburse the Physician for reasonable attorneys' fees and costs incurred by the Physician in connection with the negotiation and execution of this Amendment and as a founding Director in connection with the Employer's recent financial circumstances. Reimbursements shall be made within ten (10) calendar days following the Employer's submission of documentation to the Company evidencing the amount of such attorneys' fees and costs.

5. Effective Date. The parties acknowledge and agree that the effective date of the foregoing amendment shall be July 27, 2014.

6. No Further Amendments. The parties agree that all provisions of the Employment Agreement shall remain in full force and effect except when contradicted by this Amendment, in which case this Amendment shall control.

7. Counterparts. This Amendment may be executed in any number of counterparts, including facsimile or an e-mail of a PDF file containing a copy of the signature page of the person executing this document, each of which shall be an original, but all of which together shall constitute one in the same instrument.

**[SIGNATURE PAGE TO FOLLOW]**

102525 v5

**IN WITNESS WHEREOF**, Employer and Physician have executed this instrument effective as of the date set forth herein.

**21st CENTURY ONCOLOGY, LLC**          **PHYSICIAN**

By: _____

Name: Daniel E. Dosoretz, M.D.          James H. Rubenstein, M.D.
Title:  President and Chief Executive
        Officer

Third Amendment to Employment Agreement

*Execution Copy*

## THIRD AMENDMENT
## TO
## PHYSICIAN EMPLOYMENT AGREEMENT

This **THIRD AMENDMENT TO PHYSICIAN EMPLOYMENT AGREEMENT** (the "Amendment") is by and among 21st Century Oncology, LLC ("Employer") and James H. Rubenstein, M.D. (the "Physician").

### WITNESSETH

**WHEREAS,** Employer and Physician are parties to that certain Physician Employment Agreement, dated February 21, 2008, as amended by that certain Amendment to Employment Agreement, effective March 1, 2010, and Second Amendment to Employment Agreement, dated September 24, 2014 (collectively, the "Employment Agreement"); and

**WHEREAS,** the parties desire to further amend the Employment Agreement in accordance with the terms and conditions set forth below. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Employment Agreement.

**NOW THEREFORE,** intending to be legally bound and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**1.**     **Mutual Termination**. The parties hereby mutually agree to terminate that Lee County Diagnostic Bonus Pools Agreement, dated December 14, 2009, as amended, with such termination to be effective upon the Effective Date.

**2.**     **Share of Overall Profits**. Employer has established a bonus pool comprised of the "overall profits" of Employer, as defined by the federal Stark Law, for the provision of "designated health services" rendered to its patients. In addition to the compensation set forth in the Employment Agreement, Employer shall pay Physician a share of overall profits as follows ("Profit Share"):

(a)     Physician shall be entitled to receive a portion of the DHS Bonus Pool (as such term is defined below) equal to: (i) the DHS Bonus Pool, divided by (ii) the total number of physician employees designated to participate in the Profit Share program described herein. For purposes of the Profit Share, "DHS Bonus Pool" shall mean Fifteen Percent (15%) of global collections of Employer, net of refunds and overpayments, received by Employer during each year of the Employment Term, determined on a cash basis of accounting and attributable to all imaging services performed at Employer's centralized imaging facilities, which were rendered to patients of, or relate to services provided by the physician employees designated to participate in the Profit Share program described herein.

(b)     The Profit Share shall be calculated on a calendar year-to-date basis, prorated for any portion of a year worked, and paid within thirty (30) days following the quarter in which it has been earned, without interest and in arrears, subject to required withholdings and deductions. In the event of any overpayment of the Profit Share, Employer shall offset the amount of any overpayment from the immediately succeeding Profit Share payment next due to you (if any).

(c)     If at any time there are fewer than five (5) physicians eligible to participate in the Profit Share as part of their overall compensation, Employer shall have the right to terminate the Profit Share program. Notwithstanding the foregoing, Employer shall use reasonable efforts to supplement the number of physicians assigned to the DHS Bonus Pool to attain at least five (5) physicians so that the Profit Share may be paid as otherwise provided hereunder.

(d)     The parties believe that this Profit Share program complies with all relevant federal and state laws, regulations, and other applicable authority. The Profit Share program is intended to divide overall profits in a reasonable and verifiable manner that is not directly related to the volume or value of any physician's referrals. Notwithstanding any other provision herein, if either party in good faith believes that due to an enacted or promulgated law, regulation, rule, or standard, an official interpretation thereof or change of interpretation, or a written allegation or directive by a governmental or accreditation entity or agency, the Profit Share program (i) poses a material risk of sanction or material adverse change to such party (including without limitation, jeopardy to such party's participation in or payment under any government health care program) or any of Employer's directors, officers, employees, or agents, or (ii) prevents or materially limits referrals to or from either party, or (iii) prevents or materially limits Employer from billing for services referred by the participation physician employees or receiving payment for such services, then such party shall give written notice to the other party regarding such belief and a proposal to amend the terms of the Profit Share. The parties shall then make a good faith effort to amend the terms of the Profit Share to comply with such laws or regulations or other authority. In the event the parties cannot agree in good faith to an amendment of the terms of the Profit Share, then the party giving notice shall have the right to terminate the Employment Agreement upon thirty (30) days from the date of such written notice.

**3.     Section 3.** The parties agree that for purposes of determining the RVUs generated by Physician to calculate the Production Bonus in Section 3 of the Employment Agreement, RVUs may be reduced or increased based upon (i) final denial of payment (prospective or retrospective) for such RVU services if such denial is caused by a failure of Physician to provide the denied services in accordance with the Employment Agreement or requirements of the applicable governmental or third party payor, including any requirement to obtain preauthorization for services (ii) final adjustment of the coding that determines such RVUs by governmental and third party payors, or (iii) Employer being prohibited from billing for services due to Physician's non-compliance with the Employment Agreement or applicable governmental or third party payor requirements, including any requirement to obtain preauthorization for services.

**4.     Sections 20, 21 and 22.** The Employment Agreement is amended to add the following as new Sections 20, 21 and 22 immediately following the current Section 19 as follows:

"20.        **Code of Conduct.** As a condition of Physician's employment hereunder, Physician agrees at all times to comply with the Employee Handbook and Code of Conduct, as well as the policies, procedures and rules and regulations of Employer. This includes Physician's compliance with and participation in the Compliance Program, including on-time completion of mandatory training, reporting any suspected violations, cooperating with internal audits and investigations, meeting with the Regional Compliance Officer and Chief Compliance Officer as requested, and adhering to any corrective action resulting from audits or investigations.

*Execution Copy*

21.          **Compliance with Corporate Integrity Agreement**.   Physician will complete at least annual training regarding Employer's Corporate Integrity Agreement requirements, compliance program, and applicable federal health care program requirements. Such training will include information regarding the Anti-Kickback Statute, the Stark Law and examples of arrangements that potentially implicate the Anti-Kickback Statute or the Stark Law. Physician acknowledges that Physician has received a copy of Employer's written policies and procedures regarding its compliance program, including those policies and procedures that address the applicable requirements of the Corporate Integrity Agreement, federal health care programs, and the Stark Law and Anti-Kickback Statute. Each party represents and warrants that it will not violate the Anti-Kickback Statute or the Stark Law with respect to its performance under this Agreement.

22.          **Offset**.   Whenever Employer is obligated to pay any sum to you, any amounts that you owe to Employer may be deducted from that sum before payment."

5.          **Effective Date of Amendment.** The parties acknowledge and agree that the effective date of this Amendment shall be July 1, 2018.

6.          **Restatement.**   The parties agree that all provisions of the Employment Agreement shall remain in full force and effect except when contradicted by this Amendment, in which case this Amendment shall control.

7.          **Counterparts.**   This Amendment may be executed in any number of counterparts, including PDF and facsimile signature counterparts, each of which shall be deemed an original instrument, and said counterparts shall constitute but one and the same agreement which may be sufficiently evidenced by one counterpart.

**[SIGNATURE PAGE TO FOLLOW]**

*Execution Copy*

   **IN WITNESS WHEREOF**, Employer and Physician have executed this Amendment effective as of the date set forth herein.

21ST CENTURY ONCOLOGY, LLC

By: _____
Name: Blake Howard
Title: Interim CFO
Date:       7-19-18

PHYSICIAN

_____
James H. Rubenstein, M.D.

Date:   7/18/18

Exhibit 3

Physician's Employment Agreement

PHYSICIAN'S EMPLOYMENT AGREEMENT

BY AND BETWEEN

21ST CENTURY ONCOLOGY, LLC

AND

ARIE PABLO DOSORETZ, MD

**EXECUTION**

## PHYSICIAN'S EMPLOYMENT AGREEMENT

**THIS PHYSICIAN'S EMPLOYMENT AGREEMENT** (the "Agreement") is made this 3RD day of *February*, 2015 between 21st Century Oncology, LLC (the "Employer") and Arie Pablo Dosoretz, M.D. (the "Physician").

## RECITALS:

The following Recitals are hereby incorporated in this Agreement:

1.      Employer is engaged in the practice of medicine in the State of Florida (the "Practice") within the specialty of radiation oncology and renders medical treatment to such members of the general public as the Employer from time to time accepts as patients (the "Patients") through those physician employees of the Employer who are duly authorized and licensed to practice medicine in the State of Florida (the "Physician Employees").

2.      Physician is an individual who is or will become authorized and licensed to engage in the practice of medicine in the State of Florida.

3.      Employer and the Physician have agreed that the Employer would engage the services of the Physician as one of the Employer's Physician Employees as of the Effective Date (as hereinafter defined), upon the terms and conditions more particularly set forth in this Agreement.

## AGREEMENT

**NOW, THEREFORE,** the parties agree as follows:

1.      Employment. Subject to the terms and conditions of this Agreement, Physician shall be employed by the Employer as one of the Employer's Physician Employees and, as such, shall render professional medical services to such of the Employer's Patients as may be assigned to the Physician for such purposes in the ordinary course of the Employer's Practice, as more particularly provided in this Agreement.

2.      Employment Term. The Physician's employment hereunder shall commence on August 17, 2015 (the "Effective Date") and shall continue through August 16, 2018 and, thereafter, shall be automatically renewed for additional periods of one (1) year each thereafter, unless either party gives written notice to the other party at least ninety (90) days in advance of the renewal date of its intent not to renew the Agreement or unless terminated earlier as hereinafter provided (the "Employment Term").

3.      Compensation. In consideration for the services of the Physician hereunder as one of the Employer's Physician Employees, the Employer shall pay to the Physician compensation (the "Compensation") consisting of regular periodic payments (the "Salary") and bonuses as more particularly provided herein:

3.1      Salary. During each year of the Employment Term, Physician shall be paid the annual Salary as set forth below, which annual Salary shall be paid in convenient

installments, without interest and in arrears, in accordance with the Employer's customary payroll practices, but not less frequently than monthly:

        3.1.1   During the first contract year of the Employment Term, Physician shall be entitled to receive an annual Salary of Three Hundred Fifty Thousand Dollars ($350,000.00) or the pro rata portion thereof for any portion of a year.

        3.1.2   During the second year of the Employment Term, Physician shall be entitled to receive an annual Salary of Three Hundred Seventy-Five Thousand Dollars ($375,000.00), or the pro rata portion thereof for any portion of a year worked.

        3.1.3   During the third year of the Employment Term, Physician shall be entitled to receive an annual Salary of Four Hundred Thousand Dollars ($400,000.00), or the pro rata portion thereof for any portion of a year worked.

        3.2    Production Bonus. Physician shall be paid a production bonus equal to Three Dollars ($3.00) per RVU generated by Physician per year in excess of 100,000 Total RVUs ("Bonus Payment"). The Bonus Payment shall be calculated on a calendar year basis and paid by Employer to Physician on a pro rated basis within thirty (30) days following the end of each calendar quarter. For example, if Physician generates 30,000 RVUs in calendar quarter 1, Physician shall receive a pro rata portion of the Bonus Payment equal to the amount of RVUs generated in calendar quarter 1 in excess of 25,000 RVUs (i.e., 5,000 RVUs or $15,000). Continuing with the example, if Physician generates 75,000 RVUs in calendar quarters 1 and 2, at the end of calendar quarter 2 Physician shall receive a pro rata portion of the Bonus Payment equal to the amount of RVUs generated in calendar quarters 1 and 2 in excess of 50,000 RVUs less the Bonus Payment paid in calendar quarter 1 (i.e., 25,000 RVUs multiplied by $3.00 equals $75,000 less the $15,000 bonus paid at the end of calendar quarter 1). Physician shall receive a pro rata portion of the Bonus Payment for any portion of a year worked. For example, if Physician works six (6) months in a year, then Physician's Bonus Payment will be equal to Three Dollars ($3.00) per RVU generated over 50,000 Total RVUs.

        4.    Representations, Warranties, and Covenants of the Physician.   Physician represents and warrants to Employer that the following statements shall be true, correct, and complete as of the Effective Date and shall be true, correct, and complete at all times during the Employment Term:

        4.1    This Agreement constitutes a legal, valid, and binding agreement and obligation of the Physician, enforceable against the Physician in accordance with its terms;

        4.2    The execution of this Agreement by the Physician and the performance of Physician's obligations hereunder shall not constitute a breach of any duty, covenant, understanding, or agreement to which he is a party or by which Physician is bound; specifically, the Physician represents and warrants to the Employer that he is not subject to any contractual restrictions on his ability to compete with any former employer, including but not limited to those contained in any noncompetition, nonsolicitation, and/or confidentiality agreements;

        4.3    Physician has not discussed with patients of his former employer, or in any way notified any such patients, that he will be employed by the Employer;

4.4     Physician will not bring with him to his position with the Employer any proprietary information of any former employer or any other person, including but not limited to Rolodexes, Daytimers, and patient lists or files;

4.5     Physician has not solicited or recruited, or attempted to solicit or recruit, any fellow physicians or employees of any former employer to work with him for the Employer;

4.6     Physician is duly licensed and registered and in good standing under the laws of the State of Florida to practice medicine, and such license and registration have not been suspended, revoked, or restricted in any manner;

4.7     Physician is duly licensed and authorized to practice medicine in the State of Florida and is Board Eligible in the area of radiation oncology;

4.8     Physician will become Board Certified in the area of radiation oncology on or before the expiration of the Initial Term and thereafter will maintain Board Certification in the area of radiation oncology throughout the Employment Term;

4.9     Physician either has admitting and hospital staff privileges or shall obtain and maintain in good standing admitting and hospital staff privileges at such hospitals as Employer shall reasonably request;

4.10    Physician is a participating physician in, and has agreed to accept assignment for payment under, the Medicare or Medicaid programs and such other third party payor or managed care programs, including, without limitation, health maintenance programs and preferred provider organizations, with respect to which Employer is then a participant;

4.11    Physician has a valid U.S. Drug Enforcement Administration number;

4.12    Physician's license or right to practice medicine or to dispense or prescribe drugs in any state of the United States has never been suspended, revoked, or canceled for any reason;

4.13    Physician's admitting and hospital staff privileges at any hospital at which the Physician ever had such privileges have never been suspended, revoked, or canceled for any reason; and

4.14    Physician has never been denied medical malpractice insurance coverage with respect to any application therefor or under any policy thereof for any reason, and Physician knows of no fact, condition, circumstance, or event that has caused or would cause Physician to be denied or uninsurable for medical malpractice insurance coverage.

4.15    Physician has completed a background check satisfactory to Employer prior to the Effective Date.

5.     Duties and Responsibilities.

5.1     Area of Responsibility. Subject to the direction and control of the Employer, Physician's principal areas of responsibility shall be those of a physician, practicing predominantly within the specialty of radiation oncology. The Employer agrees that the Physician shall have such authority as may be reasonably required by Physician in order to discharge such responsibilities in an efficient and proper manner.

5.2     Full-Time Employment. Physician's employment hereunder shall be of a full-time nature consisting of five (5) days per week. Except for leaves of absence as hereinafter provided, Physician shall devote Physician's entire professional time, attention, and energies to the business and affairs of Employer, and shall use Physician's best efforts, skills, and abilities in the diligent performance of Physician's duties and responsibilities specified herein.

5.3     Duties and Responsibilities.     In fulfilling Physician's duties and responsibilities hereunder, Physician shall comply with the policies and procedures of Employer, including the Employee Handbook and Employer's corporate compliance program, as such may be modified from time to time, provided that the same are reasonable and do not violate any applicable law or code of professional responsibility or the terms of this Agreement. During the Employment Term, Physician shall provide in-office and hospital coverage, including hospital call coverage on weekends, evenings, and after hours, on an equal basis with other Physician Employees who provide services for the Employer. During the Employment Term, Physician agrees to perform such other reasonable administrative services and duties as Employer may, from time to time, designate and assign to Physician. During the Employment Term, Physician shall become a participating physician in, and agrees to accept assignment for payment under, such third party payor or managed care programs, including, without limitation, health maintenance programs and preferred provider organizations, as Employer shall designate from time to time, and shall obtain and maintain admitting and hospital staff privileges at hospitals as Employer may reasonably require. During the Employment Term, Physician shall not engage in or carry on or be employed by, directly or indirectly, any other medical business or profession; provided, however, that nothing herein contained shall prohibit Physician from investing or trading in stocks, bonds, commodities, or other securities or forms of investments, including real property, or pursuing non-professional activities; provided, further, that such activities do not materially adversely affect or interfere with Physician's performance of Physician's duties, responsibilities, and obligations as specified or contemplated hereunder.

5.4     Practice Assignment. Physician shall be assigned primarily to provide services at Employer's radiation oncology practices located within Lee County (the "Offices").

5.5     Residence. Physician will be expected to reside within Lee County, Florida and to participate in the life of the community there.

5.6     Additional Responsibilities. In further fulfilling duties and responsibilities hereunder, Physician shall attend Tumor Boards, Cancer Conferences, and Cancer Society meetings.

6.     Employer's Patients.   Employer shall determine who shall be accepted as its Patients, and Physician recognizes that such Patients accepted are Patients of Employer and not the Physician.  Employer shall designate, or establish a procedure for designating, which of its Physician Employees shall treat each such Patient.   Physician shall be free to exercise Physician's professional judgment in connection with the diagnosis and treatment of a Patient and in fulfilling Physician's responsibilities for Employer; however, Physician agrees to observe and comply with the policies, standards, and procedures of Employer as the same shall exist and be modified from time to time by Employer, provided they are reasonable and do not violate any applicable statute, law, rule, or regulation, of any governmental body.  Upon the request of the Employer in connection with a claim, action, or specific Patient question, whether made during, or after the occurrence of an "Event of Termination" (as hereinafter defined), Physician shall provide in writing a true and complete account of all procedures relating to the rendering of professional services by Physician in connection with such claim, action, or Patient question.

7.     Fees and Billing Practices.

7.1     Employer shall charge for professional services rendered by Physician as one of Employer's Physician Employees in accordance with the fee and billing practices established by Employer, from time to time, and shall be responsible for seeing that sufficient information is provided to Employer so that an accurate record of such services and fees is maintained.  All fees, charges, compensation, monies, and other things of value realized or received by Employer as a result of the professional medical services rendered by Physician or the employees or independent contractors of Employer shall be deposited in a bank account or bank accounts established in the name of and maintained on behalf of Employer.  Physician expressly agrees and covenants that the Compensation and benefits received by Physician under this Agreement shall satisfy and discharge in full all of Physician's claims upon Employer for compensation in respect of services rendered hereunder.   Physician acknowledges that Physician's services rendered hereunder in no way confer upon Physician any ownership interest in or personal claim upon any fees charged by Employer for Physician's services, whether the same are collected during the Employment Term or after the termination thereof, and Physician hereby disclaims and renounces any such interest or claim.   Physician hereby assigns to Employer all of Physician's right, title, and interest in and to any fees charged by Employer for professional medical services rendered by Physician for and on behalf of Employer hereunder, and agrees to cooperate with Employer and to execute any additional documents requested by Employer in order to confirm, ratify, or effect this assignment.

7.2     Nothing in this Agreement shall be construed as preventing Physician from participating in personal business activities outside of the scope of his employment hereunder; provided, however, such activities do not violate the restrictions set forth in that certain Noncompetition and Confidentiality Agreement dated as of even date herewith between Physician and Employer (the "Noncompetition Agreement") or otherwise interfere with his obligations hereunder.  Physician agrees not to practice or provide professional services to persons other than patients of the Employer pursuant to this Agreement except with the written consent of Employer, which may be granted or withheld in its reasonable discretion. All revenue collected by Physician for professional medical activities and services rendered during the term of Physician's employment hereunder which are outside of the Employer's business but for which the Employer has provided consent, including, but not limited to, lectures, reports,

articles, books, medical writings, honoraria, or witness fees and the like, shall belong to Physician.

8.      Attorney-in-Fact. Physician hereby appoints the Employer to be Physician's true and lawful attorney-in-fact for the following purposes as same relate to the services provided by the Physician during the Employment Term: (a) to bill Patients in Physician's name and on Physician's behalf; (b) to collect accounts receivable resulting from such billing in Physician's name and on Physician's behalf; (c) to receive payments from Blue Cross and Blue Shield, Medicare, Medicaid, payments from health plans, and all other third-party payors; (d) to receive the cash proceeds of any accounts receivable; (e) to take possession of and endorse in the name of Physician any notes, checks, money orders, insurance payments, and other instruments received in payment of accounts receivable; (f) to deposit all such fees, collections, and charges in a bank account or bank accounts established in the name of and maintained on behalf of Employer, and (g) to initiate legal proceedings in the name of Physician (i) to collect any accounts and monies owed to Employer for services rendered by Physician, (ii) to enforce the rights of Physician as creditor under any contract or in connection with the rendering of any service, and (iii) to contest adjustments and denials by governmental agencies (or its fiscal intermediaries) as third-party payors. Physician authorizes Employer, as Physician's attorney-in-fact, to take any further action and to execute such documents and instruments that Employer shall consider necessary or advisable in connection with any of the foregoing, hereby giving Employer full power and authority to do and perform each and every act or thing whatsoever requisite or advisable to be done in connection with the foregoing as fully as Physician might or could do personally, and hereby ratifying and confirming all that Employer shall lawfully do or cause to be done by virtue thereof or hereof.

The foregoing power (i) is a special power of attorney coupled with an interest and is irrevocable, and (ii) shall survive the death, Disability (as defined in Section 13.1.3 hereof), legal incapacity, bankruptcy, or insolvency, of Physician; provided, however, that this power of attorney shall terminate upon termination of this Agreement with respect to accounts receivable arising from services rendered by Physician after the Effective Date of Termination (as such term is defined below) of Physician's employment hereunder.

9.      Insurance and Benefits.

9.1     Professional Liability Insurance. Employer shall maintain medical malpractice insurance on the Physician's behalf in the minimum amounts and with such carriers and upon such terms as are designated by Employer; provided, however such amounts shall be equal or greater to amounts required under applicable state law and shall be equal to the coverage provided to Employer's other similarly situated physician employees. The insurance coverage provided under this Section 9.1 shall be maintained on a "claims made" basis, whereby Physician shall have insurance coverage for any claim related to acts or omissions that may have occurred during the Term of this Agreement.

9.2     Continuing Insurance Coverage. In the event of the expiration or termination of this Agreement, the parties shall be responsible for obtaining and paying for Continuing Coverage (as defined below) as follows:

(a)    If Physician's employment with Employer terminates for any reason other than Physician's (i) death, (ii) Disability, or (iii) retirement from the practice of medicine after the later of the five (5) year anniversary of (A) the Effective Date, or (B) the date upon which Employer began providing medical malpractice insurance on Physician's behalf (if such dates are different) (the "Retirement Vesting Period"), Physician shall obtain, at Physician's sole expense, either (x) a tail insurance policy with an unlimited reporting period, or (y) a medical malpractice insurance policy providing for coverage that is retroactive to a date no later than the Effective Date of Physician's employment hereunder, in each case with an insurer acceptable to Employer in its sole discretion and which policy insures Physician from and against claims that may be made after the Effective Date of Termination (as hereinafter defined) of Physician's employment hereunder, but that arise out of, result from, or relate to acts, errors, omissions, events, or circumstances involving professional medical services rendered by Physician for and on behalf of Employer during the Employment Term, with the same coverage limits as provided in the medical malpractice insurance policy insuring Physician and maintained by Employer immediately prior to the Effective Date of Termination of Physician's employment hereunder (collectively, "Continuing Coverage"). If Physician obtains a medical malpractice insurance policy to provide Continuing Coverage in accordance with clause (y) of the preceding sentence, Physician shall keep such policy in effect and active for at least five (5) years from the Effective Date of Termination and shall provide Employer with evidence that such policy remains in effect and active at each renewal date. Notwithstanding the foregoing, during such five (5) year period, Physician shall not be prohibited from replacing such medical malpractice insurance policy with a tail insurance policy as contemplated by clause (x) above.

(b)    If Physician's employment with Employer terminates due to Physician's (i) death, (ii) Disability, or (iii) retirement from the practice of medicine after the end of the Retirement Vesting Period, Employer shall provide Physician with Continuing Coverage in accordance with the Employer insurance policy in effect as of the Effective Date of Termination of Physician's employment hereunder. Notwithstanding the foregoing, if, at any time after Physician is eligible to receive Continuing Coverage from Employer upon retirement in accordance with the provisions of this Section 9.2(b), Physician resumes the full or part time practice of medicine and Employer's insurance company determines that the Continuing Coverage obtained by Employer is no longer valid due to Physician's changed circumstances:

(1)    Physician shall immediately reimburse Employer for what the full cost of Continuing Coverage would have been had Physician's employment terminated for a reason other than one set forth in Section 9.2(b)(i)-(iii) above;

(2)    Physician shall use best faith efforts to promptly obtain new Continuing Coverage at Physician's own expense to replace the Continuing Coverage provided by Employer which was rendered void by Physician's changed circumstances; and

(3)    Physician shall indemnify, defend and hold harmless Employer and its affiliates, employees, representatives, and agents (the "Employer Parties") harmless from any and all losses, claims, causes of action, liabilities, obligations, penalties, demands, damages, costs, and expenses, including reasonable attorneys' fees, suffered or incurred by any of the Employer Parties resulting from acts, errors, omissions, events, or

circumstances involving professional medical services rendered by Physician for and on behalf of Employer during the Employment Term.

The intent of Sections 9.2(a) and 9.2(b) above are to obligate Employer to provide Physician with Continuing Coverage on the same basis and under substantially the same circumstances as Physician would generally receive Continuing Coverage from an insurance company under a medical malpractice insurance policy maintained by Physician directly.

(c)     Within thirty (30) calendar days after the Effective Date of Termination of Physician's employment hereunder for any reason other than Physician's (i) death, (ii) Disability, or (iii) retirement from the practice of medicine after the end of the Retirement Vesting Period, Physician shall provide Employer with a certificate of insurance which shall verify that Physician has obtained Continuing Coverage issued by an insurance company with at least an "A" rating through Best Services, which Continuing Coverage shall name Employer as an additional named insured, and which shall also provide that such Continuing Coverage may not be modified, amended, terminated, rescinded, or canceled without providing Employer with at least thirty (30) days' advance written notice.

(d)     In the event Physician should refuse or fail to pay his or her portion of such insurance costs as required hereinabove, or in the event Physician shall refuse or fail to provide to Employer all of the information required hereinabove, Employer may withhold or offset such costs from any amounts due to Physician whether under the terms of this Agreement or otherwise. Employer may bill Physician for any excess amounts owed and all costs associated therewith, including, but not limited to insurance premiums, legal and accounting fees and disbursements. Physician shall reimburse such amounts within fifteen (15) business days of receipt of notice from Employer of the amount thereof. Physician's failure to strictly comply with or perform Physician's obligations herein shall constitute both a failure of a condition precedent of Employer's obligations under this Agreement and a material breach of the Agreement by Physician.

9.3     Reimbursement and Offset. If the Physician's employment with Employer ends for any reason, Employer shall be entitled to the full amount of the refundable portion of the unexpired premium, if any, for the medical malpractice insurance coverage that Employer obtained. By the execution of this Agreement, the Physician irrevocably assigns any rights or interests that the Physician may have in such refund. Further, the Physician agrees to take such action and execute such documents as Employer may deem necessary to obtain such refund. If the Physician receives the refund, the Physician shall immediately reimburse Employer the pro rata amount of the premium, if any, for such medical malpractice insurance coverage paid by Employer for the unexpired term. If the Physician fails to make such reimbursement within thirty (30) calendar days after the Effective Date of Termination of the Physician's employment hereunder or within thirty (30) days after receipt by the Physician, whichever is later, Employer may offset the amount of such remaining prorated premium against any amounts due the Physician by Employer, whether hereunder or otherwise, or, in the alternative, make written demand on the Physician for reimbursement of all costs associated therewith, including, but not limited to, legal and accounting fees and disbursements.

9.4     Benefits. During the Employment Term, Physician and eligible family members may participate in all Employer sponsored group health and welfare benefit plans, subject to plan eligibility requirements and Physician's completion of related deduction authorization forms. Coverage under such plans is available to the extent obtainable, with coverage amounts as Employer shall in its sole discretion determine and subject to the limitations and restrictions of Employer's group plans as they may exist from time to time during the Employment Term.

9.5     Reimbursement of Expenses. In addition to the reimbursement of any expenses and costs incurred by the Physician set forth herein, the Employer shall reimburse the Physician for the other reasonable costs and expenses incurred by him in connection with the provision of his services hereunder, provided that such reimbursement shall be subject to the terms, conditions, and limitations set forth in Employer's Expense Reimbursement Policy as it may exist and be modified from time to time.

10.     Licenses, Fees and Dues. Employer shall pay for occupational licenses, dues to professional societies and associations and fees which are necessary to permit Physician to render services hereunder, or which, though not necessary, are reasonable and desirable and are approved by Employer.

11.     Leaves of Absence. Physician shall be permitted leaves of absence during each year of the Employment Term for vacations, for the purpose of attending professional conventions, seminars, and continuing professional education programs designed to increase, improve, or maintain the Physician's professional skills and ability, and for absence due to bona fide illness or injury, as provided in this Section 11.

11.1    Duration. During each year of the Employment Term, Physician shall be entitled to four (4) weeks leave of absence for vacations, but no more than two (2) weeks shall be taken consecutively. During each year of the Employment Term, Physician may take an additional five (5) days leave to attend professional meetings and seminars with reasonable expenses incurred therefor by the Physician to be paid for by Employer in accordance with the Employer's policies concerning same.

11.2    Scheduling. Leaves of absence for vacation and professional conventions, seminars, and continuing professional education programs shall be scheduled and taken, with Employer's prior consent, at times which are most convenient to Employer, taking into consideration seasonal fluctuations in and the demand for professional services upon Employer's Practice and vacations and other leaves of absence of Employer's other Physician Employees.

11.3    Costs. The cost of attending professional conventions, seminars, and continuing professional education programs, including registration fees, transportation, food, and lodging, shall be reimbursed to the Physician, subject to the terms, conditions, and limitations set forth in Employer's Expense Reimbursement Policy as it may exist and be modified from time to time.

11.4    Continuation and Abatement of Compensation and Benefits. During periods of leaves of absence permitted under this Section, Physician's Compensation and

benefits provided hereunder shall continue in full. Physician's Compensation and benefits provided hereunder shall abate (unless otherwise expressly required by applicable statute, rule or regulation) during periods of leave of absence taken in excess of those permitted hereunder.

11.5    Forfeiture of Unused Time. Unused leave of absence permitted under this Section 11 for any year during the Employment Term shall be forfeited (and Physician shall receive no payment thereon) upon the occurrence of an "Event of Termination" (as defined in Section 13 below) or on the last day of the year during which it accrues, whichever occurs first.

11.6    Holidays.    During each year of the employment periods hereunder, Physician will be entitled to additional paid absences for holidays as determined and scheduled by Employer (currently six (6) days per year).

12.    Expenses.

12.1    General.  Except as otherwise provided herein, during the Employment Term, and as a condition to Physician's continued employment, Employer may require Physician to incur certain reasonable expenses for promoting and furthering the business and objectives of Employer.

12.2    Transportation.    Except as otherwise provided herein, during the Employment Term, and as a condition to Physician's continued employment, Physician shall, at Physician's expense, (a) provide and use as necessary an automobile for use in connection with Physician's performance of Physician's duties under this Agreement, (b) maintain such automobile in good condition and repair, and (c) carry and maintain public automobile liability insurance that insures Physician against claims arising out of the use of such automobile in the course of Physician's employment hereunder. Such public automobile liability insurance shall have minimum limits of coverage of Two Hundred Fifty Thousand dollars ($250,000) per person and One Million dollars ($1,000,000) per occurrence. In addition, Physician shall, during the Employment Term, carry and maintain general public liability insurance or umbrella insurance, with minimum limits of coverage of One Million Dollars ($1,000,000) per occurrence. Physician agrees to provide Employer with an appropriate certificate of insurance that shall verify that Physician has obtained the automobile liability insurance coverage specified herein upon execution of this Agreement, upon each anniversary date of this Agreement, and as Employer may, from time to time, request.

12.3    Reimbursement. Subject to the terms, conditions, and limitations set forth in Employer's Expense Reimbursement Policy as it may exist and be modified from time to time, Employer shall, during each year of the Employment Term, reimburse Physician for such reasonable expenses incurred during the promotion and furtherance of Employer's business and objectives as Employer pre-approves in writing or shall in its absolute sole discretion determine, including, but not limited to, the following: professional entertainment and promotional expenses; professional and occupational licenses; cellular telephone charges; beeper expenses; educational expenses; and expenses of membership in professional societies.

13.    Termination of Employment. Upon the occurrence of an "Event of Termination" (as hereinafter defined), Physician's employment hereunder as one of the Employer's Physician

Employees and this Agreement shall terminate as of the "Effective Date of Termination" (as hereinafter defined); and, except as otherwise specifically provided herein, the rights and the responsibilities of Employer and Physician shall be as more particularly provided in this Section 13 and Section 14 hereof.

13.1.1 Event of Termination. For purposes of this Agreement, an "Event of Termination" shall mean and include any one (1) or more of the following events:

13.1.2 The mutual agreement of Employer and Physician to terminate this Agreement;

13.1.3 The death of Physician;

13.1.4 Physician suffers a "Disability" (defined as Physician's inability to carry out his duties under this Agreement for a period in excess of sixty (60) consecutive days or any ninety (90) or more days during any three hundred sixty five (365) day period);

13.1.5 The termination of Physician's employment hereunder pursuant to Section 13.2 hereof;

13.1.6 The expiration or nonrenewal of this Agreement; or

13.1.7 The termination of Physician's employment hereunder pursuant to Section 13.3 hereof.

13.2    Termination Without Cause. Notwithstanding anything contained in this Agreement to the contrary, either party may terminate Physician's employment hereunder at any time without "Cause" (as hereinafter defined) by giving the other party hereto written notice thereof no less than ninety (90) calendar days in advance of the Effective Date of Termination.

13.2.1 Services During Interim. Between the date of the notice of termination of employment as described in this Section and the Effective Date of Termination, Physician shall continue to render services in accordance with the terms and conditions of this Agreement.

13.2.2 Cessation of Services During Notice Period. Notwithstanding the foregoing provisions, Employer may, by written notice to Physician, relieve Physician of Physician's obligations to continue rendering services in accordance with the terms of this Agreement during the notice period, in which event Employer shall continue the payment of Salary and other benefits which would otherwise be payable to Physician from the date of such notice to the Effective Date of Termination. During such period, Physician expressly agrees to comply with this Agreement, and Physician's right to continue to receive payments of Physician's Salary and other benefits hereunder during such period is conditioned upon such compliance.

13.3    Termination for Cause. During the Employment Term, Physician's employment may be terminated by Employer without advance notice for "Cause." For purposes of this Agreement, "Cause" shall include, without limitation, the following:

13.3.1  Physician's material breach of this Agreement;

13.3.2  Physician's material breach of the Noncompetition Agreement;

13.3.3  Physician's willful neglect of employment duties as specified in this Agreement or willful misconduct injurious to Employer;

13.3.4  Physician's willful and deliberate violation of any rule, law, or administrative regulation (other than traffic violations or similar minor misdemeanors);

13.3.5  The suspension, revocation, or cancellation of the Physician's license or right to practice medicine or to dispense or prescribe drugs in any state of the United States; or the placing or imposing of any restrictions or limitations, by any governmental authority having jurisdiction over Physician, upon Physician so that Physician cannot engage in the professional service for which Physician was employed hereunder;

13.3.6  The exclusion of the Physician as a participating physician in the Medicaid and Medicare programs or any other third party payor or managed care programs, including, without limitation, health maintenance programs and preferred provider organizations, with respect to which Physician was a participant or with respect to which Employer is then a participant;

13.3.7  The adjudication by any professional organization having jurisdiction that Physician is guilty of professional misconduct;

13.3.8  Physician's loss of hospital staff privileges at any hospital where the Employer regularly engages in practice;

13.3.9  The occurrence of any fact, condition, circumstance, or event that causes Physician to be uninsurable for medical malpractice liability insurance coverage;

13.3.10  Physician's failure to obtain or maintain Board Certification in radiation oncology as required herein;

13.3.11  Physician willfully damages Employer's property, business, reputation, or goodwill;

13.3.12  Physician willfully injures any Patient, guest, invitee, independent contractor, employee, or agent of Employer or any other person or entity in connection with the performance of services hereunder for or on behalf of Employer;

13.3.13  Physician sexually harasses any employee, independent contractor, or agent of Employer or commits any act which otherwise creates an offensive work environment for employees, independent contractors, or agents of Employer;

13.3.14  A court of competent jurisdiction adjudicates Physician incompetent or appoints a guardian or conservator for Physician;

13.3.15    Physician is continually inattentive to, or neglectful of, the duties to be performed by Physician;

13.3.16    Physician uses any mood altering or controlled substances except as prescribed by a physician or authorized by law;

13.3.17    Physician becomes unfit to perform the essential functions of a physician for the Employer as set forth in this Agreement, with or without reasonable accommodation;

13.3.18    Physician accepts other employment that places restrictions on Physician's ability to continue to render professional services under this Agreement; or

13.3.19    Physician's unsatisfactory background check as determined by Employer.

13.4    Effective Date of Termination. The "Effective Date of Termination" shall mean the last day on which Physician actually performs services for Employer, or would have performed such services had Employer not given notice pursuant to this Section.

13.5    Notice and Opportunity to Cure. If, during the Employment Term, any one (1) or more of the acts, events, or circumstances described in Section 13.3 occurs which Employer reasonably determines is capable of cure within a fifteen (15) day period, Employer shall deliver written notice thereof to Physician specifying in reasonable detail the nature and extent of such act, event, or circumstance; and if Physician fails to cure such act, event, or circumstance within fifteen (15) calendar days after Physician receives such written notice from Employer, Employer may immediately terminate Physician's employment hereunder for Cause by delivering written notice thereof to Physician.

13.6    Obligations Subsequent to Termination. If an Event of Termination occurs for any reason, Employer and Physician shall have the following respective obligations:

13.6.1    Compensation. If an Event of Termination occurs for any reason, Physician shall be entitled to receive only the Compensation determined as of the Effective Date of Termination and not theretofore paid, and any Compensation that would have accrued subsequent to the Effective Date of Termination shall abate. Notwithstanding the foregoing, if Employer elects to relieve Physician of the obligation to render services during the notice of termination period pursuant to the provisions of Section 13.2. hereof, Physician shall be entitled to receive the Compensation he would have received pursuant to the immediately preceding sentence had Employer not made such election, provided Physician is in compliance with this Agreement.

13.6.2 Benefits.    If an Event of Termination occurs for any reason, Physician shall be entitled to receive or continue to receive benefits due or payable under any pension or profit sharing plan and any disability, medical, and life insurance plans maintained by Employer, if any. Physician shall only be entitled to such benefits to the extent that such plans are in force and effect and to the extent that he may be entitled to any benefits hereunder in accordance with the terms and conditions thereof, without any further financial obligations or

contributions on the part of Employer with respect to such benefits. Notwithstanding anything contained herein to the contrary, Employer expressly reserves the right to modify, amend, or terminate, in whole or in part, at any time, or from time to time, any employee benefit plan or welfare benefit plan that it may sponsor or maintain, including, without limitation, its qualified retirement plan or group health plan, if any. Except as otherwise specifically provided in this Agreement or otherwise required by law, upon the occurrence of an Event of Termination, all other benefits that Physician may be entitled to receive shall be discontinued and forfeited, and Employer shall have no further obligations to Physician as of the Effective Date of Termination. Notwithstanding the foregoing, if Employer elects to accelerate Physician's Effective Date of Termination of employment hereunder to an intermediate date pursuant to the provisions of Section 13.2.2 hereof, Physician shall be entitled to receive the benefits he would have received had the Employer not made such election, provided Physician is in compliance with this Agreement.

13.6.3 Cooperation of Parties. Following any notice of termination of employment hereunder, whether given by Employer or Physician, Physician shall reasonably cooperate with Employer in all matters relating to the winding up of Physician's pending work on behalf of Employer and the orderly transfer of such work to Employer's other Physician Employees.

13.6.4 Assistance in Litigation. Employer and Physician covenant and agree that upon reasonable notice and without further payment or consideration, each shall furnish such information and proper assistance to the other as may be reasonably required by such party in connection with any litigation in which the other is, or may become, a party, at any time following Physician's termination of employment hereunder.

13.6.5 Patient Records. Physician acknowledges, understands, and agrees that all records and files concerning Patients belong to and constitute the property of Employer and not that of Physician and that Employer shall be the records owner thereof. Therefore, upon the occurrence of an Event of Termination, all records and files concerning Patients shall remain on the premises and in the possession of Employer, and Physician shall promptly return any such records and files to Employer that Physician may then have, or at any time thereafter discover to be, in Physician's possession. Notwithstanding the foregoing, Employer shall provide Physician with reasonable access to patient records and files as shall be reasonably necessary to assist Physician in connection with any actions or proceeding related thereto.

13.6.6 Patient Fees. If at any time subsequent to the occurrence of an Event of Termination any checks (or any other form of payment) for services performed by the Physician while employed by the Employer are received by Physician, Physician shall properly endorse and deliver such checks (or other form of payment) to the principal office of Employer, together with the postmarked envelope, if any, and any other documentation accompanying such payment within five (5) calendar days of receipt. If, subsequent to the occurrence of an Event of Termination, Employer receives any correspondence addressed to Physician which Employer reasonably believes in good faith relates to any aspect of services rendered by Physician while employed by Employer, the Physician authorizes Employer to inspect such correspondence to determine its contents and to retain the original of such correspondence if it relates to such services and send a copy to Physician within five (5) calendar days, or, if it is unrelated to such

services, the Employer shall promptly forward the original to Physician within five (5) calendar days. Upon or subsequent to the occurrence of an Event of Termination, the Physician shall not deliver a notice of change of business address to the U.S. Postal Services or any third party without advance notice to the Employer.

13.6.7 Physician's Compliance with this Agreement. All Compensation and benefits due or payable to Physician hereunder subsequent to the occurrence of an Event of Termination, including Compensation and benefits payable to Physician during the notice of termination period pursuant to the provisions of Section 13.2.2 hereof, shall be subject to Physician's compliance with this Agreement.

14. Restrictive Covenants. Simultaneously with the execution and delivery of this Agreement, the Physician shall execute and deliver to the Employer the Noncompetition Agreement. The provisions, terms, and conditions of such Noncompetition Agreement are incorporated by reference into this Agreement and, for all proper purposes, shall be deemed integral parts of this Agreement.

15. General Provisions.

15.1 Law Applicable. This Agreement shall be construed under and in accordance with the internal substantive laws of the State of Florida.

15.2 References. Unless the context otherwise requires, the following shall apply: (a) references to this Agreement shall include any amendment or renewal hereof; (b) words such as "herein," "hereinafter," "hereof," "hereto" and "hereunder" refer to this Agreement as a whole; (c) whenever any reference is made in this Agreement to a party hereto, such reference shall (when applicable) be deemed to be and include references to such party's estate, personal representative, legal representative, heirs, successors, assigns, and transferees (direct or indirect) thereof; (d) capitalized words and phrases used in this Agreement that are capitalized for reasons other than syntax or grammar shall have the meaning attributable to them hereunder; (e) references to the masculine gender in this Agreement shall be deemed to include the feminine and neuter, and references to the singular shall include the plural, and vice versa, where appropriate; (f) references to a noun, verb, adjective, or adverb shall be deemed to include the inflected form thereof, and vice versa, where appropriate; (g) any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder; and (h) the word "including" shall mean including without limitation.

15.3 Severability. In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof; and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

15.4 Entire Agreement. This Agreement contains the entire agreement of the Employer and the Physician regarding the subject matter contained herein and supercedes any prior understanding or agreement, whether written or oral, between Employer and Physician with respect to the subject matter contained herein.

15.5 Modification and Waiver. No provision of this Agreement may be amended, modified, waived, or discharged unless such amendment, modification, waiver, or discharge is agreed to in writing and signed by Employer and Physician. No waiver by Employer or Physician of any default or breach of any provision of this Agreement by the other shall be deemed to extend to or operate as a waiver of any prior or subsequent default or breach of any provision of this Agreement or affect in any way any right arising by virtue of any prior or subsequent occurrence. No delay or omission on the part of Employer or Physician in exercising any right or remedy that such party may now or hereafter have hereunder or otherwise at law or in equity shall operate as a waiver thereof, and no single or partial exercise by such party of any such right or remedy shall preclude any other future exercise thereof or the exercise of any other right or remedy.

15.6 Binding Effect; Benefit. This Agreement shall be binding upon, and inure to the benefit of, Employer and Physician and their respective heirs, legal and personal representatives, and permitted successors and assigns (including but not limited to the rights and obligations set forth in the Noncompetition Agreement).

15.7 Assignment. Physician may neither assign Physician's rights nor delegate Physician's duties and obligations under this Agreement; provided, however, that nothing contained in this Agreement shall prevent Employer from reorganizing, merging, or consolidating with or into another person or entity or transferring, selling, exchanging, or otherwise disposing of all or substantially all of Employer's assets; and further provided, that Employer may, from time to time and without notice to the Physician, transfer and assign this Agreement (including but not limited to the rights and obligations set forth in the Noncompetition Agreement) and its rights and obligations hereunder to any other person or entity that assumes the duties and obligations of Employer hereunder.

15.8 Notice. Whenever any notice is required or permitted to be given under any provision of this Agreement, such notice shall be in writing, signed by or on behalf of the party giving the notice, and shall be deemed to have been given when delivered by personal delivery or mailed by certified or registered mail, postage prepaid, return receipt requested, addressed to the party or parties to whom such notice is to be given, at the address set forth under such party's signature hereto (or at such other address as such party may specify in a previous notice similarly given).

15.9 Venue.

15.9.1 Venue of any action arising out of or relating to (i) any breach or threatened breach of any provision of this Agreement, (ii) the construction, interpretation, validity, and enforceability of any provision of this Agreement or (iii) any aspect of the employment relationship between the Employer and the Physician, shall be in the federal or state courts having jurisdiction over Lee County, Florida.

15.9.2 The parties to this Agreement hereby waive their right to a trial by jury of any claim or cause of action arising out of or relating to (i) any breach or threatened breach of any provision of this Agreement, (ii) the construction, interpretation, validity, and

enforceability of any provision of this Agreement or (iii) any aspect of the employment relationship between the Employer and the Physician.

15.10 Costs of Enforcement. If any action at law or in equity (including any arbitration or appellate proceeding) is brought to interpret, construe, or enforce any provision of this Agreement or any right of any party to this Agreement, the non-prevailing party shall be responsible for and shall pay, all fees, costs, and expenses incurred by the prevailing party in connection therewith, including, without limitation, all legal and accounting fees, costs, and expenses at all levels of litigation or arbitration.

15.11 Multiple Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original instrument, and said counterparts shall constitute but one and the same agreement which may be sufficiently evidenced by one counterpart.

15.12 Offset. Whenever Employer is to pay any sum to Physician, any amounts that Physician owes Employer may be deducted from that sum before payment.

15.13 Waiver of Breach or Violation Not Deemed Continuing. The waiver by any party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach hereof.

15.14 Headings. The headings of the various Sections herein contained are intended for ease of reference only and are not to be construed as evidence of the intent as to the content thereof.

15.15 Construction. In the event of any dispute as to the precise meaning of any term contained herein, the principles of construction and interpretation that written documents be construed against the party preparing the same shall not be applicable. Every covenant, term, and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any party hereto.

15.16 Incorporation by Reference. All exhibits and schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

15.17 Withholding. Salary, bonuses, employee benefits, and all other compensation paid by Employer and taxable to Physician shall be subject to required withholding taxes, social security taxes, and other employment taxes required to be withheld by Employer with respect to compensation paid by an employer to an employee.

15.18 Public Announcement. No public announcement of Physician's employment by Employer or any other matter contemplated herein, including termination, shall be made by either party without the prior written consent of the other party.

15.19 Expenses. Each party shall pay the fees and expenses of its own counsel and experts and all other expenses incurred by such parties incident to the negotiation, preparation, and consummation of this Agreement.

15.20 <u>Survival of Representations, Warranties, and Covenants</u>.    All representations and warranties of the parties hereto made in this Agreement shall survive the termination, expiration or nonrenewal of this Agreement, and all covenants and agreements of the parties hereto made in this Agreement shall survive the termination, expiration or nonrenewal of this Agreement until such covenants and agreements shall have been fully performed and satisfied.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be made and entered into on the date last below written with the intent to be legally bound.

21ST CENTURY ONCOLOGY, LLC

By: _____

Name: RICHARD R LEWIS

Title: VICE PRESIDENT

PHYSICIAN:

_____
Arie Pablo Dosoretz, MD

1692276v.1

Non-Competition and Confidentiality Agreement

EXECUTION

## NON-COMPETITION AND CONFIDENTIALITY AGREEMENT

**THIS NON-COMPETITION AND CONFIDENTIALITY AGREEMENT** (the "Agreement") is made as of this ___**3ᴿᴰ**___ day of _**February**_, 2015 between 21ˢᵗ Century Oncology, LLC, a Florida limited liability company (the "Employer"), 21ˢᵗ Century Oncology, Inc., a Florida corporation ("21C"), and Arie Pablo Dosoretz, M.D., a physician licensed to practice medicine in the State of Florida (the "Physician").

### RECITALS:

The following Recitals are hereby incorporated in this Agreement:

1.      Employer and Physician are parties to that certain Employment Agreement dated as of even date herewith (the "Employment Agreement").

2.      Employer has strong and legitimate business interests in preserving and protecting its investment in the Physician, its trade secrets and confidential business information, and its substantial relationships with its employees, contractors, referral sources and existing patients.

3.      Employer desires to preserve and protect its legitimate business interests further by restricting competitive activities of the Physician during the term of the Physician's employment with the Employer and following the end of his employment with the Employer.

4.      The Employer is a subsidiary or affiliate of 21C and may participate in any proceeding (arbitration or litigation) to interpret, construe, or enforce any provision of this Agreement

5.      21C is intended to be a third-party beneficiary of the restrictive covenants and related provisions set forth in this Agreement.

6.      The signatories to this agreement intend that 21C may participate in any proceeding (arbitration or litigation) to interpret, construe, or enforce any provision of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing, the mutual promises and the covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employer and the Physician agree as follows:

1.      Employment.  The Physician shall perform such duties as are assigned to him pursuant to the Employment Agreement, subject to the instructions, directions, and control of the Employer; such duties may be changed from time to time by the mutual agreement of the Employer and the Physician, and any such change in duties shall not affect or modify Physician's obligations under this Agreement in any way.

2.      Disclosure of Agreement.  The Physician shall disclose this Agreement to all persons or entities that are his prospective employers or which may otherwise retain him, whether or not the business of such proposed employers or persons or entities is competitive with, or related to, the business of the Employer at that time.  The Employer may disclose this

Agreement to anyone, at any time, whether or not it has reason to believe that the Physician has breached, or threatens to breach, any provision of this Agreement.

3.     Restrictions on Competition.   During his employment with the Employer and for a period of twenty four (24) months immediately following the end of such employment for any reason, the Physician shall not, directly or indirectly, do any of the following:

(a)     engage in the ownership, operation or management of, or consultation to, radiation oncology facilities or otherwise engage in the provision of professional or administrative radiation oncology services (whether as a separate business or in conjunction with any practice or other medical services provider and whether at a hospital or elsewhere) (a "Competing Business") within (i) Lee, Collier, and Charlotte Counties, Florida and (ii) a twenty (20) mile radius of each of the Employer's radiation oncology centers located at: (x) the Offices as such term is defined in the Employment Agreement, (y) any other offices or locations where the Physician provides or provided professional or administrative services on behalf of the Employer; and (z) any hospital where Physician provides services on behalf of Employer (the area described herein and the area covered by the radius around such offices and locations shall be collectively referred to as the "Service Area"); and;

(b)     have any interest, whether as owner, stockholder, member, partner, director, officer, employee, consultant or otherwise, in any Competing Business within the Service Area;

(c)     counsel, solicit, or attempt to induce any person employed or otherwise engaged by the Employer (or any of its affiliated or related companies), whether that person is a full-time physician, part-time physician, or independent contractor, to terminate his or her employment or retention with the Employer;

(d)     employ any person employed or retained by the Employer (or any of its affiliated or related companies), whether that person is a full-time physician, part-time physician, or independent contractor;

(e)     provide radiation oncology medical services of any kind to any patient referred to him, or to his new employer, by any person that referred five (5) or more patients to the Employer during the twelve (12) months immediately preceding the end of his employment with the Employer; or

(f)     provide radiation oncology medical services of any kind to any patient treated by the Employer in the twenty-four (24) months immediately preceding the end of his employment with the Employer.

Notwithstanding any provisions of this Agreement to the contrary, the restrictions contemplated by Sections 3(a), 3(e) and 3(f) above shall not prohibit Physician from providing emergency medical treatment

4.     Restrictions on Competition – Remedies.   In the event of a breach by the Physician of any of the restrictions set forth in Section 3, above, of this Agreement, such a breach would irreparably injure the Employer and would leave the Employer with no adequate

2

remedy at law. If legal proceedings should have to be brought by the Employer against the Physician to enforce any such restrictions, the Employer shall be entitled to all available civil remedies, including without limitation:

(a)     preliminary and permanent injunctive relief restraining the Physician from violating, directly or indirectly, either as an individual on his own account or as a partner, joint venturer, officer, director, stockholder, employee, agent, independent contractor, or otherwise, the restrictions of Section 3, above;

(b)     compensatory damages;

(c)     attorneys' and paralegals' fees in the trial and appellate courts; and

(d)     costs and expenses of investigation and litigation, including reasonable charges for the time spent by the Employer's management in assisting counsel in connection with such investigation and litigation, expert witness fees, deposition costs (appearance fees and transcript charges), injunction bond premiums, travel and lodging expenses and all other reasonable costs and expenses.

Nothing in this Agreement shall be construed as prohibiting the Employer from pursuing any other legal or equitable remedies available to it for breach or threatened breach of any of the restrictions of Section 3 of this Agreement.

Should legal proceedings have to be brought by the Employer against the Physician to enforce any restriction of Section 3 of this Agreement, the period of restriction shall be deemed to begin running on the date of entry of an order granting the Employer preliminary or temporary injunctive relief and shall continue uninterrupted for the remainder of the period of restriction; the Physician acknowledges that the purposes and intended effects of those restrictions would be frustrated by measuring the period of restriction from the date his employment with Employer ended where the Physician failed to honor the restrictions until directed to do so by order of court.

5.     Restrictions on Proprietary Information.     The Physician shall not, except in connection with the performance of his duties for the Employer or except with the prior written consent of the Employer, at any time during or following the end of his employment with the Employer for any reason whatsoever, directly or indirectly, use or disclose, for any purpose whatsoever, "Proprietary Information" (as hereinafter defined). The Physician shall not remove any Proprietary Information from the premises of the Employer and shall promptly return any and all Proprietary Information to the Employer that he at any time may discover to be in his possession.

For purposes of this Agreement, Proprietary Information shall mean any information or materials that the Physician has obtained or that has been disclosed to the Physician, whether intentionally or unintentionally, as a result of his association and relationship with the Employer, relating to the Employer or to its business, finances, referral sources, vendors (prospective as well as current), patients (prospective as well as current), or employees (prospective as well as current), regardless of whether any such information is marked as confidential or proprietary, and regardless of its medium, including, without limitation, (a) the

3

name of, or any list or lists which identify any referral source, vendor, patient, financial institution, officer, director, shareholder, employee, agent or independent contractor of the Employer; (b) any forms, agreements or documents developed by or for the Employer; (c) the business plans or objectives of the Employer; (d) any financial, management, or treatment procedures of the Employer; (e) any trade secrets of the Employer; (f) any business or medical procedures developed by any officer, director, shareholder, employee, agent, or independent contractor of the Employer; (g) any databases, computer programs, computer printouts, files, records, documents, or other papers, information, or materials concerning the Employer's business, finances, referral sources, vendors, patients, or employees; (h) any other information not generally known that is disclosed to the Physician or known by him as a consequence of his employment or association with the Employer; and (i) any other information or materials related to any of the foregoing categories of information. Proprietary Information shall not, however, for purposes of this Agreement, include any information that is or that becomes publicly available information through no fault or act of the Physician.

During his employment with the Employer and for a period of five (5) years following the end of his employment or association with the Employer, the Physician shall not be employed by, work for, or consult for any person, whether or not a competitor of the Employer, in a position in which his duties and responsibilities would inherently and inevitably involve the use or disclosure of trade secrets or other confidential business information of the Employer.

6.  Proprietary Information – Remedies.  If legal proceedings should have to be brought by the Employer against the Physician to enforce the restrictions of Section 5 of this Agreement, the Employer shall be entitled to all available civil remedies, including but not limited to:

(a)  preliminary and permanent injunctive relief restraining the Physician from any unauthorized use or disclosure of any Proprietary Information, in whole or in part, and from rendering any service to any person, corporation, partnership, limited liability company, joint venture, association or other business organization to whom or to which such information, in whole or in part, has been disclosed or is threatened to be disclosed;

(b)  compensatory damages;

(c)  exemplary damages;

(d)  attorneys' and paralegals' fees in the trial and appellate courts; and

(e)  costs and expenses of investigation and litigation, including reasonable charges for the time spent by the Employer's management in assisting counsel in connection with such investigation and litigation, expert witness fees, deposition costs (appearance fees and transcript charges), injunction bond premiums, travel and lodging expenses and all other reasonable costs and expenses.

Nothing in this Agreement shall be construed as prohibiting the Employer from pursuing any other legal or equitable remedies available to it for breach or threatened breach of the provisions of Section 5 of this Agreement.

4

7. Reasonableness of Restrictions. The Physician acknowledges that each of the restrictions of this Agreement are reasonable and necessary; each provision is supported by valid business interests, including without limitation the need to protect the Employer's Proprietary Information and the need to protect its substantial relationships with: (i) referral sources, (ii) employees and other persons associated with it, and (iii) prospective and current patients, and the restrictions of this Agreement are essential to the full protection of each of those valid business interests.

If any restriction of this Agreement is held by a court of competent jurisdiction to be unreasonable, arbitrary or against public policy for any reason, that restriction shall be considered divisible as to line or lines of business, time, and geographic area; if a court of competent jurisdiction should determine the specified line or lines of business, the specified period, or the specified geographic area to be unreasonable, arbitrary, or against public policy for any reason, a narrower line of business, a lesser period, or a smaller geographic area that is determined to be reasonable, non-arbitrary, and not against public policy for any reason may, at the Employer's discretion, be enforced by the Employer against the Physician. Employer's rights and obligations set forth herein may be assigned by the Employer to any person without the knowledge or consent of, or notice to, the Physician.

8. Damages Presumption. If the Physician violates any provision of this Agreement, directly or indirectly, either as an individual on his own account or as a partner, joint venturer, officer, director, stockholder, employee, agent, independent contractor, or otherwise, any and all medical services provided by the Physician (or the corporation, partnership, limited liability company, joint venture, association, or other business organization with which he is associated) in competition with the Employer shall be presumed to have been provided by the Employer but for the Physician's violation of the restriction.

9. Independent Covenants. Each of the obligations of this Agreement are obligations not dependent upon any other provision of (i) the Employment Agreement, (ii) this Agreement, or (iii) any other agreement between the signatories to this Agreement, specifically including but not limited to any compensation agreement, and the existence of any claim or cause of action of the Physician against the Employer, whether predicated upon the Employment Agreement, this Agreement, or any other agreement between the signatories to this Agreement, the employment or business relationship between the Employer and the Physician, or otherwise, specifically including but not limited to claims or causes of action predicated upon the Employer's failure or refusal to pay earned compensation, shall not constitute a defense to the enforcement by the Employer of any provision of this Agreement.

10. Employer Property: Physician Duty to Return. All of the Employer's patient files, correspondence, internal memoranda, brochures, training manuals, project files, price lists, patient and vendor lists, prospectus reports, patient or vendor information, literature, territory printouts, call books, notebooks, textbooks, and all other like information or products, including all copies, duplications, replications, and derivatives of such information or products, now in the possession of the Physician or acquired by the Physician while employed by or associated with the Employer, shall be the exclusive property of the Employer and shall be returned to the Employer no later than the last date he provide services to the Employer under the terms of the Employment Agreement.

5

11.    Inventions, Ideas, Processes, and Designs:  All inventions, ideas, processes, programs, software, and designs (including all improvements) (i) conceived or made by the Physician during the course of his employment or association with the Employer (whether or not actually conceived during regular business hours) and for a period of six (6) months subsequent to the termination, expiration or nonrenewal of such employment or association with the Employer and (ii) related to the business of the Employer, shall be disclosed in writing promptly to the Employer and shall be the sole and exclusive property of the Employer.  An invention, idea, process, program, software, or design (including an improvement) shall be deemed "related to the business of the Employer" if (a) it was made with the Employer's equipment, supplies, facilities, or confidential information, (b) results from work performed by the Physician for the Employer, or (c) pertains to the current business or demonstrably-anticipated research or development work of the Employer.  The Physician shall cooperate with the Employer and its attorneys in the preparation of patent and copyright applications for such developments and, upon request, shall promptly assign all such inventions, ideas, processes, and designs to the Employer.  The decision to file for patent or copyright protection or to maintain such development as a trade secret shall be in the sole discretion of the Employer, and the Physician shall be bound by such decision. The Physician shall provide, on the back of this Agreement, a complete list of all inventions, ideas, processes, and designs, if any, patented or unpatented, copyrighted or non-copyrighted, including a brief description, which he made or conceived prior to his employment or association with the Employer and which therefore are excluded from the scope of this Agreement.

12.    "Unclean Hands" Defense.  The Physician shall not be permitted to assert the defense of "unclean hands" in any action to enforce any obligation of this Agreement unless: (i) while actively employed by the Employer and before the termination of his employment with the Employer, the Physician notified the Employer in writing and in detail of the conduct allegedly constituting or underlying such defense, and (ii) the Physician gave the Employer thirty (30) days in which to cure such conduct.

13.    Waiver.  The waiver by the Employer of a breach or threatened breach of any obligation of this Agreement by the Physician shall not be construed as a waiver of any subsequent breach by the Physician.  The refusal or failure of the Employer to enforce any obligation of this Agreement (or any similar agreement) against any other employee, agent, or independent contractor, for any reason, shall not constitute a defense to the enforcement by the Employer of any similar obligation, nor shall it give rise to any claim or cause of action by the Physician against the Employer.

14.    Cooperation.  The Physician shall cooperate fully with all reasonable requests for information and participation by the Employer, its agents, or its attorneys, in prosecuting or defending claims, suits, and disputes brought on behalf of or against the Employer and in which the Physician is involved or about which the Physician has knowledge.

15.    Survival of Obligations.  The rights, responsibilities, and duties of the signatories to this Agreement, and the covenants and agreements contained in this Agreement, shall survive the end of the Physician's employment with the Employer, shall continue to bind the signatories, and shall continue in full force and effect until each and every obligation of the signatories

pursuant to this Agreement (and any document or agreement incorporated hereby by reference) shall have been fully performed.

16. Consideration. The Physician expressly acknowledges and agrees that (i) the execution by the Employer of this Agreement and (ii) the Employer's subsequent employment of him constitutes full, adequate, and sufficient consideration to him from the Employer for the duties, obligations, and covenants of the Physician under this Agreement, including, by way of illustration and not by way of limitation, the agreements, covenants, and obligations of the Physician under this Agreement. The Employer expressly acknowledges and agrees similarly with respect to the consideration received by it from the Physician under this Agreement.

17. Acknowledgments. The Physician hereby acknowledges that he has been provided with a copy of this Agreement for review prior to signing it, that he has been given the opportunity to have this Agreement reviewed by his own attorney prior to signing it, that he understands the purposes and effects of this Agreement, and that he has been given a signed copy of this Agreement for his own records.

18. Forum Selection; Waiver of Jury Trial. For any action brought by the Employer and against the Physician arising out of a breach or threatened breach of this Agreement, or otherwise related to the business relationship between the Employer and the Physician, venue shall be in any federal or state court sitting having jurisdiction over Lee County, Florida determined by a judge sitting without a jury.

19. Attorneys' Fees. In the event of a dispute related to this Agreement, the substantially prevailing party shall be entitled and the losing party shall pay to the substantially prevailing party all costs incurred by the substantially prevailing party in connection with such dispute, including, without limitation, reasonable attorney fees and costs, incurred through all trial and appellate levels and post-judgment proceedings.

20. Representation. Physician represents and warrants that Employee is not subject to any restrictive agreement, other contractual or legal obligation, limitation, or prohibition that would prohibit Employee from entering into this Agreement or accepting employment by Employer. In the event of a breach of this warranty, Physician agrees to indemnify and hold Employer harmless from any and all claims, costs, expenses, attorney's fees, lawsuits, or other liability arising from such breach.

21. Rules of Construction and Interpretation.

(a) Entire Agreement. This Agreement constitutes the entire agreement between the signatories pertaining to the subject matters of this Agreement, and it supersedes all negotiations, preliminary agreements, and all prior and contemporaneous discussions and understandings of the signatories in connection with the subject matters of the Agreement. Except as otherwise herein provided, no covenant, representation, or condition not expressed in this Agreement, or in an amendment made and executed in accordance with the provisions of sub-paragraph (b) of this Section 21, shall be binding upon the signatories or shall affect or be effective to interpret, change, or restrict the provisions of this Agreement.

7

     (b)  Amendments. No change, modification, or termination of any of the terms, provisions, or conditions of this Agreement shall be effective unless made in writing and signed or initialed by all signatories to this Agreement.

     (c)  Governing Law. This Agreement shall be governed and construed in accordance with the internal substantive laws of the State of Florida without regard to conflict of law rules.

     (d)  Separability. If any paragraph, subparagraph, or provision of this Agreement, or the application of such paragraph, subparagraph, or provision, is held invalid by a court of competent jurisdiction, the remainder of the Agreement, and the application of such paragraph, subparagraph, or provision to persons or circumstances other than those with respect to which it is held invalid, shall not be affected.

     (e)  Headings and Captions. The titles and captions of sections and subsections contained in this Agreement are provided for convenience of reference only, and they shall not be considered a part of this Agreement for purposes of interpreting or applying any term or provision of this Agreement; such titles or captions are not intended to define, limit, extend, explain, or describe the scope or extent of this Agreement or any of its terms or provisions in any manner or way whatsoever.

     (f)  Multiple Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original instrument, and said counterparts shall constitute but one and the same agreement which may be sufficiently evidenced by one counterpart.

**[SIGNATURE PAGE TO FOLLOW]**

8

**IN WITNESS WHEREOF,** the signatories have executed this Agreement as of the date first above written.

21st CENTURY ONCOLOGY, LLC

By: _____

Name: RICHARD R LEWIS

Title: VICE PRESIDENT

21st CENTURY ONCOLOGY, INC.

By: _____

Name: FRANK ENGLISH

Title: TREASURER

PHYSICIAN:

_____

Arie Pablo Dosoretz, M.D.

1692302v.1

9

Amendment to Letter Agreement

### AMENDMENT TO
### LETTER AGREEMENT

This **AMENDMENT TO LETTER AGREEMENT** ("Amendment") is made and entered into effective as of April 1, 2017, by and between 21st Century Oncology, LLC ("Employer"), and Arie Pablo Dosoretz, M.D. ("Physician").

### WITNESSETH

**WHEREAS,** Employer and Physician are parties to that certain Letter Agreement, effective August 17, 2015 ("Agreement"). Capitalized terms used herein but no otherwise defined shall have the meanings ascribed to them in the Agreement; and

**WHEREAS,** the parties desire to amend the Agreement in accordance with the terms and conditions set forth below.

**NOW THEREFORE,** intending to be legally bound for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Section 3.1**. Section 3.1 of the Agreement shall be deleted in its entirety and replaced with the following:

"3.1. Physician shall be entitled to receive an annual Salary of (a) Three Hundred Thousand Dollars ($300,000.00) for clinical services and (b) Two Hundred Thousand Dollars ($200,000.00) for administrative services. The annual Salary shall be paid pro rata for any portion of a year worked "

2. **Section 3.2**. Section 3.2 of the Agreement shall be amended to deleted the reference of "100,000 Total RVUs" and replace it with "50,000 Total RVUs".

3. **Section 5.3**. Section 5.3 of the Agreement shall be amended to add the following at the end of Section 5.3:

"Physician and Employer agree that Physician shall devote approximately two (2) days per week performing administrative duties as may be requested by Employer. Physician shall complete any documentation of such administrative services as may be requested by Employer from time to time."

4. **Effective Date**. The parties acknowledge and agree that the effective date of this Amendment shall be April 1, 2017.

5. **Restatement**. The parties agree that all provisions of the Agreement shall remain in full force and control and effect except when contradicted by this Amendment, in which case this Amendment shall control.

6. **Counterparts**. This Amendment may be executed in any number of counterparts, including facsimile or an e-mail of a PDF file containing a copy of the signature

4827-8631-2261, v. 3

*Execution Copy*

page of the person executing this document, each of which shall be an original, but all of which together shall constitute one in the same instrument.

**[SIGNATURE PAGE TO FOLLOW]**

4827-8631-2261, v. 3

*Execution Copy*

IN WITNESS WHEREOF, Physician and a duly authorized representative of Employer, intending to be legally bound, have executed this Amendment as of the date first set forth above.

21ST CENTURY ONCOLOGY, LLC

By: _____

Name: _____

Title: _____ CEO _____

PHYSICIAN

_____
Arie Pablo Dosoretz, M.D.

Second Amendment to Physician's Employment Agreement

*Execution Copy*

## SECOND AMENDMENT
## TO
## PHYSICIAN'S EMPLOYMENT AGREEMENT

This **SECOND AMENDMENT TO PHYSICIAN'S EMPLOYMENT AGREEMENT** (the "Amendment") is by and among 21st Century Oncology, LLC ("Employer") and Arie Pablo Dosoretz, M.D. (the "Physician").

### WITNESSETH

**WHEREAS,** Employer and Physician are parties to that certain Physician's Employment Agreement, effective August 17, 2015, as amended by that Amendment to Letter Agreement, effective April 1, 2017 (collectively, the "Employment Agreement"); and

**WHEREAS,** the parties desire to amend the Employment Agreement in accordance with the terms and conditions set forth below. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Employment Agreement.

**NOW THEREFORE,** intending to be legally bound and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**1.** **Mutual Termination**. The parties hereby mutually agree to terminate that Lee County Diagnostic Bonus Pools Agreement, dated November 6, 2015, and that Pathology Laboratory Bonus Pool Addendum, effective March 1, 2016, with such termination to be effective upon the Effective Date.

**2.** **Share of Overall Profits**. Employer has established a bonus pool comprised of the "overall profits" of Employer, as defined by the federal Stark Law, for the provision of "designated health services" rendered to its patients. In addition to the compensation set forth in the Employment Agreement, Employer shall pay Physician a share of overall profits as follows ("Profit Share"):

(a) Physician shall be entitled to receive a portion of the DHS Bonus Pool (as such term is defined below) equal to: (i) the DHS Bonus Pool, divided by (ii) the total number of physician employees designated to participate in the Profit Share program described herein. For purposes of the Profit Share, "DHS Bonus Pool" shall mean Fifteen Percent (15%) of global collections of Employer, net of refunds and overpayments, received by Employer during each year of the Employment Term, determined on a cash basis of accounting and attributable to all imaging services performed at Employer's centralized imaging facilities, which were rendered to patients of, or relate to services provided by the physician employees designated to participate in the Profit Share program described herein.

(b) The Profit Share shall be calculated on a calendar year-to-date basis, prorated for any portion of a year worked, and paid within thirty (30) days following the quarter in which it has been earned, without interest and in arrears, subject to required withholdings and deductions. In the event of any overpayment of the Profit Share, Employer shall offset the amount of any overpayment from the immediately succeeding Profit Share payment next due to you (if any).

*Execution Copy*

(c)     If at any time there are fewer than five (5) physicians eligible to participate in the Profit Share as part of their overall compensation, Employer shall have the right to terminate the Profit Share program. Notwithstanding the foregoing, Employer shall use reasonable efforts to supplement the number of physicians assigned to the DHS Bonus Pool to attain at least five (5) physicians so that the Profit Share may be paid as otherwise provided hereunder.

(d)     The parties believe that this Profit Share program complies with all relevant federal and state laws, regulations, and other applicable authority. The Profit Share program is intended to divide overall profits in a reasonable and verifiable manner that is not directly related to the volume or value of any physician's referrals. Notwithstanding any other provision herein, if either party in good faith believes that due to an enacted or promulgated law, regulation, rule, or standard, an official interpretation thereof or change of interpretation, or a written allegation or directive by a governmental or accreditation entity or agency, the Profit Share program (i) poses a material risk of sanction or material adverse change to such party (including without limitation, jeopardy to such party's participation in or payment under any government health care program) or any of Employer's directors, officers, employees, or agents, or (ii) prevents or materially limits referrals to or from either party, or (iii) prevents or materially limits Employer from billing for services referred by the participation physician employees or receiving payment for such services, then such party shall give written notice to the other party regarding such belief and a proposal to amend the terms of the Profit Share. The parties shall then make a good faith effort to amend the terms of the Profit Share to comply with such laws or regulations or other authority. In the event the parties cannot agree in good faith to an amendment of the terms of the Profit Share, then the party giving notice shall have the right to terminate the Employment Agreement upon thirty (30) days from the date of such written notice.

3.     **Section 3.2**. The parties agree that for purposes of determining the RVUs generated by Physician to calculate the Bonus Payment in Section 3.2 of the Employment Agreement, RVUs may be reduced or increased based upon (i) final denial of payment (prospective or retrospective) for such RVU services if such denial is caused by a failure of Physician to provide the denied services in accordance with the Employment Agreement or requirements of the applicable governmental or third party payor, including any requirement to obtain preauthorization for services (ii) final adjustment of the coding that determines such RVUs by governmental and third party payors, or (iii) Employer being prohibited from billing for services due to Physician's non-compliance with the Employment Agreement or applicable governmental or third party payor requirements, including any requirement to obtain preauthorization for services.

4.     **Sections 15.21 and 15.22**. The Employment Agreement is amended to add the following as new Sections 15.21 and 15.22 immediately following the current Section 15.20 as follows:

"15.21.     **Code of Conduct**. As a condition of Physician's employment hereunder, Physician agrees at all times to comply with the Employee Handbook and Code of Conduct, as well as the policies, procedures and rules and regulations of Employer. This includes Physician's compliance with and participation in the Compliance Program, including on-time completion of mandatory training, reporting any suspected violations, cooperating with internal audits and investigations, meeting with the Regional Compliance Officer and Chief Compliance Officer as requested, and adhering to any corrective action resulting from audits or investigations.

*Execution Copy*

15.22.    **Compliance with Corporate Integrity Agreement**.    Physician will complete at least annual training regarding Employer's Corporate Integrity Agreement requirements, compliance program, and applicable federal health care program requirements. Such training will include information regarding the Anti-Kickback Statute, the Stark Law and examples of arrangements that potentially implicate the Anti-Kickback Statute or the Stark Law. Physician acknowledges that Physician has received a copy of Employer's written policies and procedures regarding its compliance program, including those policies and procedures that address the applicable requirements of the Corporate Integrity Agreement, federal health care programs, and the Stark Law and Anti-Kickback Statute. Each party represents and warrants that it will not violate the Anti-Kickback Statute or the Stark Law with respect to its performance under this Agreement."

**5.**    **Effective Date of Amendment.** The parties acknowledge and agree that the effective date of this Amendment shall be July 1, 2018.

**6.**    **Restatement.**    The parties agree that all provisions of the Employment Agreement shall remain in full force and effect except when contradicted by this Amendment, in which case this Amendment shall control.

**7.**    **Counterparts.**    This Amendment may be executed in any number of counterparts, including PDF and facsimile signature counterparts, each of which shall be deemed an original instrument, and said counterparts shall constitute but one and the same agreement which may be sufficiently evidenced by one counterpart.

**[SIGNATURE PAGE TO FOLLOW]**

*Execution Copy*

**IN WITNESS WHEREOF,** Employer and Physician have executed this Amendment effective as of the date set forth herein.

21ST CENTURY ONCOLOGY, LLC

By: _____

Name: Blake Howard

Title: Interim CFO

Date: 7.12.2018

**PHYSICIAN**

_____

Arie Pablo Dosoretz, M.D.

Date: 7/10/18

Third Amendment to Physician's Employment Agreement

**THIRD AMENDMENT**
**TO**
**PHYSICIAN'S EMPLOYMENT AGREEMENT**

This **THIRD AMENDMENT TO PHYSICIAN'S EMPLOYMENT AGREEMENT**
("Amendment") is made and entered into by and between 21st Century Oncology, LLC
("Employer"), and Arie Pablo Dosoretz, M.D. (the "Physician").

**WITNESSETH**

**WHEREAS,** Employer and Physician are parties to that certain Physician's Employment
Agreement, dated February 3, 2015, as amended by a Letter Agreement on April 1, 2017 and by
an Amendment effective as of July 1, 2018 (the "Employment Agreement").

**WHEREAS,** the parties desire to amend the Agreement in accordance with the terms and
conditions set forth below.

**NOW THEREFORE,** intending to be legally bound for good and valuable consideration,
the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Section 3**. The Employment Agreement is hereby amended to delete Section 3 in
its entirety and to replace it with the following:

"3.      Compensation. In consideration for the services of the Physician hereunder
as one of the Employer's Physician Employees, the administrative services described in Section
5.1(b), below, and as Chief Clinical Administrative Officer for specified Affiliated PCs (as
described in Section 5.1(c), below), the Employer shall pay to the Physician compensation
consisting of regular periodic payments, and payment for administrative and Chief Clinical
Administrative Officer as more particularly provided herein (the "Compensation"):

3.1      Clinical Services.      For Physician's clinical services provided
pursuant to Section 5.1(a), Physician shall be entitled to Four and 30/100 Dollars ($4.30) per RVU
generated by Physician ("Clinical Compensation"). The Clinical Compensation shall be calculated
on a calendar month basis and paid by Employer to Physician within thirty (30) days following the
end of each calendar month.

3.2      Administrative Services.      For Physician's administrative services
provided pursuant to Section 5.1(b), Physician shall be entitled to an annual salary of One Hundred
Thousand Dollars ($100,000) ("Administrative Compensation") or the pro rata portion thereof for
any portion of a year.      Physician's Administrative Compensation shall be paid in convenient
installments, without interest and in arrears, in accordance with the Employer's customary payroll
practices, but not less frequently than monthly.

3.3      Affiliated PCs Chief Clinical Administrative Officer.      For
Physician's services as the Chief Clinical Administrative Officer for Affiliated PCs provided
pursuant to Section 5.1(c), Physician shall receive an annual salary of Twenty Thousand Dollars
($20,000.00) or the pro rata portion thereof for any portion of a year that Physician provides such

1

services; provided that Physician is providing such services for at least one (1) Affiliated PC. If Physician is not serving as the Chief Clinical Administrative Officer for any Affiliated PC, then Physician shall not receive any compensation under this Section 3.3. Physician shall also receive an annual salary of Twenty Thousand Dollars ($20,000.00) for each Affiliated PC listed on Schedule 5.1(c) hereto for which Physician serves as the Chief Clinical Administrative Officer pursuant to Section 5.1(c) or the pro rata portion thereof for any portion of a year that Physician provides such services. Physician's compensation pursuant to this Section 3.3 shall be paid in convenient installments, without interest and in arrears, in accordance with the Employer's customary payroll practices, but not less frequently than monthly."

    2.    **Section 5.1**. The Employment Agreement is hereby amended to delete Section 5.1 in its entirety and to replace it with the following:

    "5.1    Area of Responsibility. Subject to the direction and control of the Employer:

    (a)    Physician shall provide services as a physician, practicing predominantly within the specialty of radiation oncology. The Employer agrees that the Physician shall have such authority as may be reasonably required by Physician in order to discharge such responsibilities in an efficient and proper manner.

    (b)    Physician shall provide physician oversight to 21st Century Oncology, Inc. and its wholly owned subsidiaries related to physician recruitment and development. Physician shall dedicate approximately ten (10) hours per week providing these administrative services.

    (c)    In addition, as agreed upon by the Parties, Physician will serve as the Chief Clinical Administrative Officer of the affiliated professional entities managed by 21st Century Oncology, Inc. and its subsidiaries as set forth on Schedule 5.1(c) ("Affiliated PCs"). Schedule 5.1(c) shall be updated if additional Affiliated PCs are added as agreed upon by the parties or if Physician ceases to serve as the Chief Clinical Administrative Officer as described below. Physician, as requested by the CEO, shall provide input and advice to the CEO regarding the operations of the Affiliated PCs for which he serves as Chief Clinical Administrative Officer and be available for consultation with the physicians of his assigned Affiliated PCS for advice on operations. As part of his duties as the Chief Clinical Administrative Officer, Physician, as directed by the CEO, will travel to each Affiliated PC for which he serves as the Chief Clinical Administrative Officer at least quarterly. Employer may terminate Physician's role as a Chief Clinical Administrative Officer of an Affiliated PC upon at least thirty days (30) days' prior written notice to Physician. Physician may resign as a Chief Clinical Administrative Officer of an Affiliated PC, upon at least one hundred twenty (120) days' prior written notice to Employer (and Schedule 5.1(c) shall be adjusted accordingly). In addition, in the event Kimberly Commins-Tzoumakas ceases to be the Chief Executive Officer of 21st Century Oncology, Inc. or Physician ceases to report directly to her related to his administrative duties under this Section 5.1(c), Employer agrees that from such date of reporting relationship change through the end of the then current contract year, Employer will only terminate Physician's then current roles as a Chief Clinical Administrative Officer for Affiliated PCs for cause."

2

*EXECUTION COPY*

3.　**Effective Date**.  The parties acknowledge and agree that the effective date of this Amendment shall be December 31, 2018.

4.　**Restatement**.  The parties agree that all provisions of the Employment Agreement shall remain in full force and control and effect except when contradicted by this Amendment, in which case this Amendment shall control.

5.　**Counterparts**.  This Amendment may be executed in any number of counterparts, including facsimile or an e-mail of a PDF file containing a copy of the signature page of the person executing this document, each of which shall be an original, but all of which together shall constitute one in the same instrument.

### [SIGNATURE PAGE TO FOLLOW]

*EXECUTION COPY*

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Amendment as of the date first set forth above.

21st **CENTURY ONCOLOGY, LLC**

By: _____

Name: Blake Howard
Title: Interim CFO
Date: _____

**PHYSICIAN**

_____

Arie Pablo Dosoretz, M.D.
Date: 12/21/18

4

*EXECUTION COPY*

## Schedule 5.1(c)

### Affiliated PCs

21st Century Oncology of California, A Medical Corporation
Katin Radiation Therapy, P.A.
Massachusetts Oncology Services, P.C.
Michael Katin, M.D., Prof. Corp.
Northwest Cancer Care Associates, P.C.
Radiation Therapy Associates of Western North Carolina, P.A.
Redding Radiation Oncologists, P.C.